UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

------------------------------------------------------------------X
JOHN DOE,

                                   Plaintiff,                            Civil Action No:

     -against-

UNIVERSITY OF TEXAS HEALTH SCIENCE
CENTER AT HOUSTON, UNIVERSITY
OF TEXAS BOARD OF REGENTS,
MARGARET MCNEESE, in her individual
and official capacity, DEANA MOYLAN,
in her individual and official capacity,
SHEELA LAHOTI, in her individual and
official capacity, and DANA MCDOWELLE,
in her individual and official capacity,

                                   Defendants.
------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S *EX PARTE* MOTION TO PROCEED UNDER
<u>PSEUDONYM AND FOR PROTECTIVE ORDER</u>**

NESENOFF & MILTENBERG, LLP
*Attorneys for Plaintiff*
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500

-and-

JORDAN, LYNCH & CANCIENNE PLLC
1980 Post Oak Blvd, Suite 2300
Houston, Texas 77056
(713) 955-4021

1

Plaintiff John Doe (hereinafter referred to as "Plaintiff" or "John Doe" or "Doe"), by his attorneys Nesenoff & Miltenberg, LLP, and Jordan, Lynch & Cancienne PLLC hereby seeks authorization to file a Complaint in the above-captioned matter as a pseudonymous Plaintiff. In light of the serious nature of the allegations contained in the Complaint, Plaintiff is justifiably concerned about the potential irreparable harm that could further prevent Plaintiff from proceeding with his future endeavors. Plaintiff's identity as described in the Complaint should not be disclosed to the public due to the nature of the allegations in said Complaint against Defendants University of Texas Health Science Center at Houston ("UT Health" or the "University"), University of Texas Board of Regents ("Board of Regents"), Margaret McNeese ("McNeese"), Deana Moylan ("Moylan"), Sheela Lahoti ("Lahoti"), and Dana McDowelle ("McDowelle") (hereinafter collectively referred to as "Defendants"). *See* Declaration of Andrew Miltenberg, Esq. ("Miltenberg Decl."), attached to Plaintiff's Motion to Proceed Under a Pseudonym.

Plaintiff is prepared to provide a statement of his true identity under seal, upon the Court's request.

## STATEMENT OF FACTS

A full accounting of the facts underlying Plaintiff's claims can be found in the Complaint. For the purposes of this motion, the relevant facts are as follows:

Doe enrolled as a medical student at UT Health in the Fall of 2017. Compl. ¶ 54. Plaintiff met Jane Roe in the Fall semester of 2018, and the two began dating exclusively. Compl. ¶ 56. As the relationship progressed, however, Roe grew controlling and manipulative, which caused frequent arguments between Doe and Roe. Compl. ¶ 57. In response to Roe's manipulative tactics, Doe frequently ended up apologizing to Roe in order to please Roe and keep peace. Compl. ¶ 58.

In the days leading up to Valentine's Day, Doe and Roe were engaged in another argument,

and so Doe told Plaintiff that he did not think it was a good idea for them to have Valentine's Day dinner on the night of February 14, 2021. Compl. ¶ 60. Plaintiff then cooked dinner for himself and drank wine while cooking. Compl. ¶ 61. As he became more intoxicated, Plaintiff grew emotional and vulnerable, and called Roe, who refused to see Plaintiff and instead stated that she was going to go to her sister's house. *Id.* Plaintiff, emotional and intoxicated, then called Roe again and threatened his own life. Compl. ¶ 62. Plaintiff then retrieved an unloaded pistol from his closet and sat on the couch with it. *Id.* Roe then showed up unannounced and entered Plaintiff's apartment without his consent with a key that Roe had refused to give back to Plaintiff previously, despite his requests. Compl. ¶ 63. Plaintiff, not wanting Roe to see him in the emotional state he was in, asked Roe to leave. Compl. ¶ 64. When Roe refused, Plaintiff waived the gun to point towards the door and told her to leave, and Roe swiftly left. *Id.* The pistol remained unloaded the entire time; Plaintiff had no intention of ever harming himself or Roe. *Id.*

Roe then called the police and had Plaintiff arrested and an order of protection put in place between them. Compl. ¶ 66. Roe then reported Plaintiff to the University to initiate a Title IX investigation. Compl. ¶ 67. Just a few nights later, however, Roe, despite requesting a no contact order against Plaintiff, showed up at Plaintiff's home and waited outside for over 45 minutes. Compl. ¶ 69.

Plaintiff met with Defendants Moylan and McNeese, as well as other University members on February 26, 2020, during which Defendants interrogated Plaintiff for over two hours in an attempt to discredit Plaintiff and bolster Roe's claims. Compl. ¶¶ 70-73. On March 9, 2020 McNeese notified Plaintiff that he was interim suspended pending the outcome of the investigation. Compl. ¶ 76. McNeese requested that Plaintiff sign an agreement waiving his hearing with regard to the interim suspension, but Plaintiff declined to sign and instead explicitly requested a hearing.

Compl. ¶¶ 76, 78. However, Plaintiff was never given such a hearing. *Id.* Moreover, despite the fact that the University moved to virtual instruction on March 13, 2020 due to the COVID-19 pandemic and as such, there was no "danger" of Plaintiff coming in contact with Roe, the University refused to lift the interim suspension. Compl. ¶ 79.

The University continued with a biased investigation that only sought to corroborate Roe's claims, and as a result, produced a factually incorrect investigation report. Compl. ¶¶ 82-83. Despite the fact that Plaintiff disproved many of Roe's claims, on April 15, 2020 the investigators still found Plaintiff responsible without a hearing for violating HOOP 59, the University's sexual misconduct policy, for dating violence. Compl. ¶ 86. Moreover, due to the fact that Plaintiff did not have a hearing, he was precluded under the University's policies from appealing the decision. Compl. ¶ 87.

Nearly one month after receiving the Title IX decision, McNeese stated that in order to determine the appropriate sanction, the University requested that Plaintiff undergo a psychological evaluation. Compl. ¶ 92. On August 5, 2020, nearly six months from the start of the investigation, Plaintiff received a determination letter from Student Affairs which stated that Plaintiff could have a "conditional return" on August 10, 2020, so long as he (i) engaged in continuous psychotherapy with a psychotherapist selected by the University until the psychotherapist says it is no longer needed; (ii) sign a consent form to allow the University to speak with the psychotherapist regarding Plaintiff's progress; and (iii) ensure that quarterly reports of the psychotherapy sessions were sent to Student Affairs, all of which confirmed that the matter was a mental health event rather than an instance of dating violence. The letter stated that signing the agreement would "indicate [Plaintiff's] agreement with these terms for [his] conditional return." Compl. ¶ 110. While Plaintiff was able to return with just enough time to complete his class requirements, Plaintiff's ability to

apply for residency for 2020 was significantly impacted, thus forcing Plaintiff to defer one year. Compl. ¶ 112.

On August 14, 2020, Plaintiff had a meeting with McNeese and Dana McDowelle at which they mentioned for the first time that there would be a notation of the finding of responsibility on Plaintiff's Medical Student Performance Evaluation ("MSPE"), which would significantly hinder Plaintiff's ability to match with a competitive residency program. Compl. ¶ 113. Incredibly, at this meeting McNeese also suggested that Plaintiff reach out to certain members of the University that also "have problems with women." Compl. ¶ 114.

On September 26, 2020, Plaintiff received a proposed order of expunction, which would make any records relating to Plaintiff's arrest disappear. Compl. ¶ 127. However, at a subsequent meeting with University administration, the University continued to treat Plaintiff as guilty and threatened him by saying "you do not want your situation to be known by a committee of 150 doctors." Compl. ¶ 134.

At Plaintiff's MSPE meeting on December 22, 2020, Plaintiff was informed that despite the fact that he received an expunction of the criminal records, the University refused to remove the notation from Plaintiff's MSPE. Compl. ¶ 148-149. McNeese mocked Plaintiff, stating that he better "get on his knees" to beg programs to accept him. Compl. ¶ 151. Due to the University's biased investigation and refusal to remove the notation from Plaintiff's MSPE, Plaintiff's ability to match with a competitive residency program has been significantly impacted and will affect his career path for the rest of his life. Compl. ¶ 152.

## ARGUMENT

Given the highly sensitive, personal nature of the allegations involved, and the absence of any prejudice to Defendants, the Court should grant Plaintiff's motion to prevent the unnecessary

disclosure of his identity as well as the names of the Complainant and witnesses. Maintaining confidentiality of their identities will protect their privacy and reputational interests, guard against the imposition of additional damages, and will not disadvantage the public, UT Health, or the individual defendants.

I.   **Legal Standards**

Although Federal Rule of Civil Procedure 10(a) generally contemplates the identification of all parties, federal courts have long permitted parties to use pseudonyms to protect privacy and reputation interests in certain situations. *See Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712 (5th Cir. 1979). There is no hard and fast rule for determining when a party may be allowed to proceed under a pseudonym in the Fifth Circuit. Rather, courts "must decide whether the considerations calling for the maintenance of a party's privacy outweigh the customary and constitutionally-based presumption of openness in judicial proceedings." *See Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981). When evaluating a motion to proceed under a pseudonym, courts should look to: "(1) whether the plaintiff seeking anonymity is suing to challenge governmental activity; (2) whether prosecution of the suit compels the plaintiff to disclose information of the utmost intimacy; and (3) whether the plaintiff is compelled to admit his intention to engage in illegal conduct, thereby risking criminal prosecution." *Id*. at 185. In addition to these factors, the Fifth Circuit also considers the "relevant facts and circumstances of a particular case," including issues such as whether a plaintiff may face a hostile public reaction, and whether the decision to proceed anonymously will have a prejudicial impact on the defending parties. *Rose v. Beaumont Indep. Sch. Dist.*, 240 F.R.D. 264, 266 (E.D. Tex. 2007).

Here, application of the relevant standards likewise justifies the use of pseudonyms by the Plaintiff in this case arising from a claim of alleged sexual misconduct under Title IX violations.

### II.     The Balancing Test Favors Plaintiff's Anonymity

As an initial matter, courts around the country have routinely permitted similarly situated plaintiffs – students falsely accused of sexual misconduct and/or intimate partner violence – to proceed by pseudonym, acknowledging the great danger such plaintiffs face in proceeding under their own names, and the futility of the lawsuit if the allegations will be forever publicly associated with plaintiffs' names. As the District Court for the Northern District of New York explained, "protecting the anonymity of sexual assault victims <u>and those accused of committing sexual assault</u> can be an important safeguard to ensure that the due process rights of all parties are protected." *Colgate Univ.*, 2016 WL 1448829, at *2 (emphasis added). *See also, e.g., Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018) (student found responsible for sexual misconduct); *Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016) (student found responsible for sexual misconduct); *Doe v. Univ. of S.C.*, No. 18-CV-161 (TLW) (PJG), 2018 WL 1215045, at *1 (D.S.C. Feb. 12, 2018) ("Doe has demonstrated compelling interests in anonymity in this matter because of the personal and sensitive nature of the underlying facts of this case, which involve allegations of sexual assault."), *report and recommendation adopted*, 2018 WL 1182508 (D.S.C. Mar. 6, 2018); *Doe v. Univ. of St. Thomas*, No. 16-CV-1127(ADM) (KMM), 2016 WL 9307609, at *2 (D. Minn. May 25, 2016) ("In cases involving intensely personal matters, the normal practice of disclosing the parties' identities yields to a policy of protecting privacy. . . . The complaint and its supporting documents describe very private sexual acts, whether consensual or not, between two young college students, and it is difficult to imagine any resolution of this case without further exploration of truly intimate matters." (citations omitted)); *Doe v. Brandeis Univ.,* 177 F. Supp. 3d 561 (D. Mass. 2016) (student found responsible for sexual assault); *Doe v. Alger*, 317 F.R.D. 37, 40 (W.D. Va. 2016) (granting motion to proceed as pseudonym by student found responsible for sexual misconduct); *Doe v.*

*Middlebury*. No. 15-CV-192 (JGM), 2015 WL 5488109 (D.Vt. Sept. 16, 2015) (student found responsible for sexual misconduct); *Doe v. Univ. of S. Florida Bd. of Trustees*, 15-CV-682-T-30 (EAJ), 2015 WL 3453753 (M.D. Fla. 2015) (student accused of battery, threats, and violence against girlfriend); *Doe v. Salisbury Univ.*, 107 F. Supp. 3d 481 (D. Md. 2015) (student accused of sexual assault); *Doe v. Washington & Lee Univ.,* No. 14-CV-00052, 2015 WL 4647996 (W.D. Va. Aug. 5, 2015) (student expelled after finding of nonconsensual intercourse); *EW v. New York Blood Ctr.,* 213 F.R.D. 108, 111 (E.D.N.Y. 2003) ("[M]any courts have held that, in lawsuits centering around sexual activity and behavior, a plaintiff is entitled to proceed under a pseudonym where revealing the plaintiff's name subjects him or her to the risk of public disapproval, harassment, or bodily harm."); *Doe v. Univ. of the South*, 687 F. Supp. 2d 744 (E.D. Tenn. 2009) (student found responsible for sexual misconduct); *see also Doe v. Penzato*, 10-CV-5154 (MEJ), 2011 WL 1833007, at *3 (N.D. Cal. May 13, 2011) (granting motion by plaintiff alleging sexual assault to proceed as pseudonym).

### A. This Case Compels Plaintiff to Reveal Information of the Utmost Intimacy

Plaintiff has presented claims regarding a highly personal and intimate matter – his tumultuous relationship and sexual experiences with a fellow student as well as his mental health struggles resulting from an abusive relationship. This case will likely involve pleadings that describe, in some detail, Plaintiff's relationship and sexual experiences with Jane Doe, his prior mental health, his multiple mental health examinations, and the effect the claims and UT Health's response has had on his life, including his academic performance. As a result, the pleadings will address not only sexual and medical history, but the impact the situation has had on his studies and educational information that is otherwise subject to protection under federal privacy law[1], along

---

[1] Plaintiff's private educational records are subject to the provisions of the Family Educational Rights and Privacy Act, commonly referred to as "FERPA," 20 U.S.C. § 1232g.

8

with his struggles to recover from both the accusations and UT Health's response.

Given that Plaintiff has received an expunction of the criminal records concerning the allegations against him and that in spite of the expunction, UT Health still plans to disclose the allegations of heinous alleged conduct to potential employers, Plaintiff's concerns about the potential impact on him if his identity becomes public is palpable. Plaintiff's MSPE notes that he was found responsible under HOOP 59, which is UT Health's sexual misconduct policy. As noted above, this court and others have repeatedly held that allegations of sexual misconduct warrant anonymity, particularly in the Title IX context. *See Doe v. El Paso County Hosp*. Dist, 2015 WL 1507840 at *4 (Apr. 1, 2015, W.D. Tex) (collecting cases); *see also Cabrera*, 307 F.R.D. at 5 (collecting cases). As testimony at trial may include potential descriptions of Plaintiff's relationship with Roe, including sexual acts, as well as details of Plaintiff's mental health issues, such information can constitute matters of "utmost intimacy." *Id.; see also Doe v. Provident Life & Accident Ins.,* 176 F.R.D. 464, 468–69 (E.D. Pa. 1997) (allowing plaintiff to proceed under a pseudonym because he was diagnosed with multiple psychiatric disorders and feared that disclosing his identity would result in permanent damage to his professional reputation); *Roe v. United States*, No. 119CV00270DADBAM, 2020 WL 869153, at *2 (E.D. Cal. Feb. 20, 2020) (allowing plaintiffs to proceed anonymously where "each of the individual plaintiffs has been subjected to an involuntary hold or mental health evaluation" because "[s]uch involuntary holds and evaluations inherently carry a high risk of social *stigmatization*.").

Moreover, where a plaintiff alleges continued mental and emotional suffering, as Plaintiff does here, such circumstances often result in the plaintiff being subjected to not only the disclosure of personal information, but also "outright humiliation." *Id.* Like in *Doe v. El Paso County*, Plaintiff is not a widely known figure in the media and the details of the allegations against him

9

are not known to those around him. Likewise, due to Plaintiff's expunction, there are no longer records of any criminal matter against Plaintiff arising from the allegations against him. Plaintiff also continues to battle with the psychological harm of the entire experience, from the false allegations of dating violence to the University's treatment of the allegations, and public disclosure of the intimate details of Plaintiff's relationship with Roe and his mental health struggles will only further such harm. *Id.* at 5.

Those accused of sexual misconduct, as Plaintiff has been, particularly in the arena of Title IX claims, face the same or similar issues in publicizing their true identities. Publication of details of the utmost intimacy, including allegedly false claims of sexual misconduct as well as mental health issues, would cause a furtherance of the harm that the litigant is seeking to avoid or overturn by filing the federal action. Furthermore, disclosure of the parties' names would undermine the university disciplinary process. As explained by the court in *Univ. of Montana*, a protective order was justified because the federal case arose from a closed university disciplinary proceeding in which all parties were entitled to confidentiality. In fact, numerous courts around the country have permitted plaintiffs alleging similar claims against colleges and universities to proceed anonymously. *See e.g. John Doe v. Columbia University and Trustees of Columbia University,* 2014 WL 6471520 (S.D.N.Y. 2014); *Doe v. Washington & Lee Univ.,* NO. 14-CV-00052, 2015 WL 4647996 (W.D. Va. Aug. 5, 2015); *Doe v. Univ. of the South*, 687 F. Supp. 2d 744 (E.D. Tenn. 2009); *Doe v. Univ. of Massachusetts-Amherst,* 2015 WL 4306521 (D. Mass. 2015); *Doe v. Univ. of S. Florida Bd. of Trustees,* 2015 WL 3453753 (M.D. Fla. 2015); *Doe v. Salisbury Univ.,* 2015 WL 3478134 (D. Md. 2015); *Doe v. Univ. of Montana*, 2012 WL 2416481 (D. Mont. 2012)("With respect to the individual students involved in the Student Conduct Code proceeding, as well as the witnesses and University Court members involved in that proceeding, the Court finds that the

interests of those individuals in avoiding undue embarrassment, harassment, and disclosure of sensitive private information outweigh the public's need to know their names," *citing to Does I–XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1068–69 (9th Cir.2000)). Similarly, Plaintiff here should be permitted to proceed anonymously due to the highly sensitive and personal nature associated with being falsely accused of sexual misconduct, as well as the personal nature of his mental health struggles.

### B. Disclosure of Plaintiff's Identity Would Result in Significant Harm to Plaintiff

In addition, Plaintiff should be permitted to proceed anonymously in this matter as the revelation of his identity would result in significant harm to Plaintiff, the exact type which he seeks to remedy by the commencement of this lawsuit. *See Doe v. Colgate Univ.,* No. 5:15-CV-1069 (LEK/DEP), 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016) ("[s]hould Plaintiff prevail in providing that the charges against him were unfounded and the procedures Defendants followed in their investigation were unfair, forcing Plaintiff to reveal his identity would further exacerbate the emotional and reputational injuries he alleges.") Accordingly, forcing Plaintiff to reveal his identity would not further any aspect of the litigation and "instead poses a risk that Plaintiff would be subject to unnecessary ridicule and attention." *Doe v. Colgate Univ.,* 2016 WL 1448829, at *3.

Thus, even if Plaintiff were ultimately exonerated and his records expunged, the disclosure of his name would nonetheless significantly hinder his ability to pursue future career and educational endeavors, as any entity or employer would undoubtedly have access to the records related to this matter and discover that Plaintiff was falsely accused of sexual misconduct. It is widely recognized that the likelihood of acceptance to an elite residency program is significantly reduced in light of the high number of applicants and stiff competition, let alone the social stigma associated with being found responsible and sanctioned for "sexual misconduct," regardless of

11

whether the decision is ultimately overturned as a result of litigation. Based on the foregoing, Plaintiff should be permitted to proceed anonymously as requiring him to reveal his identity would result in significant harm to Plaintiff, including the exact damages he seeks to remedy in this matter; namely, physical, psychological, emotional and reputational damages, economic injuries and the loss of educational and career opportunities.

### C. The Lawsuit is Against Both Government and Private Parties

When a plaintiff challenges the government, courts are more likely to allow him or her to proceed under a pseudonym than in cases involving private parties, since actions against private individuals may harm their reputations. *Rose v. Beaumont Indep. Sch. Dist.*, 240 F.R.D. 264, 266 (E.D. Tex. 2007). Here, UT Health and several of its employees are named defendants; the private parties all work for the governmental entity and are being sued in their official and individual capacities. Because the Defendants are government employees, there is much less concern than there would be with merely private individuals.

There is also a public interest in state activity, including activity that violates constitutional principles. That interest is advanced not only by this litigation proceeding, but also by protecting the identities of Doe and Roe. The only information that the public needs regarding Doe and Roe is that they were both students at UT Health. There is no public interest in learning the identities of Doe and Roe; it is sufficient that the underlying facts and legal claims are public. Therefore, this factor is neutral, at worst, and at best, favors proceeding under a pseudonym.

### D. Defendants Will Not be Prejudiced by Allowing Plaintiff to Proceed Pseudonymously

Further, Plaintiff should be permitted to proceed anonymously as Defendants will not be prejudiced in any way by proceeding against an anonymous party. "Other than the need to make redactions and take measures not to disclose plaintiff's identity, Defendants will not be hampered

12

or inconvenienced merely by Plaintiff's anonymity in court papers." *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 198 (E.D.N.Y. 2006). Significantly, Defendants are already aware of Plaintiff's true identity. Thus, there is no doubt that Defendants will have an unobstructed opportunity to conduct discovery, present their defenses and litigate this matter, regardless of whether Plaintiff identifies himself or proceeds anonymously. Accordingly, Plaintiff must be permitted to proceed anonymously in this action as revealing his name will cause significant prejudice to Plaintiff, while proceeding anonymously will not hinder Defendants in any way.

### E.  There is Weak Public Interest in Knowing Plaintiff's Identity

Plaintiff should also be permitted to proceed in this action anonymously as the public does not have a strong interest in knowing his identity. Considering the purely legal nature of the claims presented (i.e. Defendants violated Plaintiff's right to fair process in violation of Title IX and other federal and/or state law), there is a weak public interest in learning Plaintiff's identity as an individual. The public's interest in this matter would not be furthered by disclosing Plaintiff's identity, as his challenges to UT Health's biased and unfair investigatory process concerns a larger association than the interest of an individual plaintiff; it affects the male student population of UT Health as a whole. *See Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006). Shielding Plaintiff's identity will not, in this case, meaningfully limit the public's ability to consider the important issues raised by this case. There is nothing about the Plaintiff's identity that makes it "critical to the working of justice to reveal those identities." *See, Jane Roes 1-2 v. SFBSC Mgmt.*, LLC, 77 F. Supp. 3d 990 (N.D. Cal. 2015).

While in the past, courts strongly disfavored allowing plaintiffs to proceed anonymously except in extreme circumstances, the nature of the Internet today is such that any plaintiff's identity is readily accessible via a simple online search; thus, courts must be willing to afford additional

protective measures to avoid further damage to a plaintiff involved in a matter concerning such egregious and unfounded violations as the present one.

Here, if Plaintiff were required to reveal his name, even if Plaintiff were to succeed on his claims against Defendants, the public's access to his identity would result in further damage to his future educational and career endeavors, resulting in additional mental, emotional and psychological harm, the very harms which he seeks to remedy in this action. There is simply nothing about the status of the Plaintiff that would heighten any public interest beyond the normal public interest in any judicial proceedings sufficient to outweigh Plaintiff's right to privacy. Moreover, the public's knowledge will only be minimally restricted, as it will still know what is alleged to have occurred that resulted in charges of sexual misconduct being filed, as well as the flawed process by which the Defendants investigated and adjudicated those charges. Allowing Plaintiff to proceed anonymously will not significantly obstruct the public's interest in this matter. To the contrary, forcing Plaintiff to reveal his identity could have a potential chilling effect on other similarly situated future plaintiffs. Accordingly, there is not a strong public interest in knowing Plaintiff's identity as an individual, as the issues presented to this Court concern a much greater population of potential plaintiffs.

Based on the foregoing, in consideration of the balancing of relevant factors, the Court should allow Plaintiff to employ a pseudonym in this matter. The interests of Defendants and/or the public will not be harmed at this early stage of the case if Plaintiff's name is not revealed. Plaintiff and his attorneys are prepared to address measures to protect the confidentiality of his identity should the Court require disclosure to the public at a later stage in the proceedings.

## CONCLUSION

For these reasons and such other reasons as may appear just to the Court, Plaintiff John Doe requests that his *Ex Parte* Motion to Proceed Under Pseudonym and for Protective Order be granted in its entirety.

**Dated:** New York, New York
April 30, 2021

                                      **Respectfully submitted,**

                                      **NESENOFF & MILTENBERG, LLP**
*Attorneys for Plaintiff John Doe*

**By:** /s/ *Andrew Miltenberg*
Andrew T. Miltenberg, Esq. (*pro hac vice pending*)
Tara J. Davis, Esq. (*pro hac vice pending*)
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
tdavis@nmllplaw.com

-and-

**JORDAN, LYNCH & CANCIENNE PLLC**
**By:** /s/ *Walter Lynch*
Walter Lynch, Esq.
*State Bar No. 24046330*
*Federal ID No. 965265*
Amir Halevy, Esq.
*State Bar No. 24065356*
*Federal ID No. 1259956*
1980 Post Oak Blvd, Suite 2300
Houston, Texas 77056
(713) 955-4021
wlynch@jlcfirm.com
ahalevy@jlcfirm.com