IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN DOE,<br>　　　*Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | |
| | § | |
| UNIVERSITY OF TEXAS HEALTH | § | |
| SCIENCE CENTER AT HOUSTON, | § | |
| UNIVERSITY OF TEXAS BOARD OF | § | Civil Action No. 4:21-cv-01439 |
| REGENTS, MARGARET MCNEESE, in her | § | |
| individual and official capacity, DEANA | § | |
| MOYLAN, in her individual and official | § | |
| capacity, SHEELA LAHOTI, in her individual | § | |
| and official capacity, and DANA | § | |
| MCDOWELLE, in her individual and official | § | |
| capacity, | § | |
| 　　　*Defendants.* | § | |

---

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
ORIGINAL COMPLAINT & MEMORANDUM OF LAW**

---

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division

CORY A. SCANLON
Attorney-in-Charge
State Bar No. 24104599
Southern District No. 3504922
BEN DOWER
State Bar No. 24087397
Southern District No. 3071131
General Litigation Division
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone (512) 463-2120
Facsimile: (512) 320-0667
cory.scanlon@oag.texas.gov
benjamin.dower@oag.texas.gov

COUNSEL FOR DEFENDANTS

# TABLE OF CONTENTS

Table of Contents ...................................................................................................................... ii

Table of Authorities.................................................................................................................. iii

    I.    INTRODUCTION AND BACKGROUND.................................................................. 1

    II.   STATEMENT OF FACTS .................................................................................. 3

    III.  NATURE AND STAGE OF THE PROCEEDING ...................................................... 6

    IV.  STATEMENT OF THE ISSUES ......................................................................... 6

    V.   MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION.................. 6

   A.  Standard of Review........................................................................................... 6

   B.  Arguments and Authorities ............................................................................... 7

1.  UTHealth and the Administrators in their official capacities are not "persons" subject to suit under § 1983.    7

2.  Plaintiff's suit does not meet the requirements of the *Ex parte Young* exception............................. 8

3.  Plaintiff lacks standing to obtain the injunctive relief sought for the procedural due process claim.    11

4.  Plaintiff's claims for procedural due process and erroneous outcome are not ripe. ..................... 12

    VI.  MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ................................. 13

   A.  Standard of Review......................................................................................... 13

   B.  Arguments & Authorities ................................................................................ 14

1.  Plaintiff's Title IX claims against UTHealth should be dismissed for failure to state a claim for which relief may be granted........................................................................................... 14

2.  Plaintiff fails to state a plausible claim for denial of procedural due process......................... 17

3.  The Administrators are entitled to qualified immunity from Plaintiff's procedural due process claims under § 1983.................................................................................................. 23

    VII. CONCLUSION AND PRAYER FOR RELIEF .................................................... 25

CERTIFICATE OF FILING AND SERVICE........................................................................... 27

Civil Action No. 4:21-cv-01439

Defendants' Motion to Dismiss Plaintiff's Orig. Complaint        ii

# TABLE OF AUTHORITIES

## CASES

*Abbott Labs. v. Gardner,*
387 U.S. 136 (1967) ...................................................................................................12

*Aguilar v. Tex. Dep't of Criminal Justice,*
160 F.3d 1052 (5th Cir. 1998) ...................................................................................9

*Alden v. Maine,*
527 U.S. 706 (1999) .....................................................................................................8

*Alvin v. Suzuki,*
227 F.3d 107 (3d Cir. 2000)......................................................................................19

*Anderson v. Creighton,*
483 U.S. 635 (1987) ...................................................................................................23

*Ashcroft v. al-Kidd,*
563 U.S. 731 (2011) ...................................................................................................24

*Babin v. Breaux,*
587 F. App'x 105 (5th Cir. 2014).............................................................................19

*Bd. of Curators of Univ. of Mo. v. Horowitz,*
435 U.S. 78 (1978) .....................................................................................................21

*Burns-Toole v. Byrne,*
11 F.3d 1270 (5th Cir. 1994) ...................................................................................24

*City of Kenosha, Wisconsin v. Bruno,*
412 U.S. 507 (1973) .....................................................................................................7

*Clarke v. Univ. of N. Tex.,*
993 F.2d 1544, 1993 WL 185814 (5th Cir. 1993)................................................10

*Davis v. Scherer,*
468 U.S. 183 (1984) ...................................................................................................24

*DePree v. Saunders,*
588 F.3d 282 (5th Cir. 2009) ...................................................................................18

*Doe v. Univ. of Cincinnati,*
872 F.3d 393 (6th Cir. 2017) ...................................................................................22

*Doe v. Univ. of Tex. at Austin,*
No. 1:18-cv-85-RP, 2019 WL 317247 (W.D. Tex. May 15, 2018) ............... 10, 13

*Doe v. Univ. of Tex. at Austin,*
No. 1:19-CV-398-LY, 2019 WL 9076003 (W.D. Tex. Nov. 8, 2019)................17

*Edelman v. Jordan,*
415 U.S. 651 (1974) .....................................................................................................8

*Ex parte Young,*
209 U.S. 123 (1908) .....................................................................................................8

*Fontenot v. McCraw,*
777 F.3d 741 (5th Cir. 2015) ...................................................................................10

*Fort v. Dallas Indep. Sch. Dist.,*
82 F.3d 414, 1996 WL 167072 (5th Cir. 1996) ...................................................14

*Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.,*
528 U.S. 167 (2000) ...................................................................................................12

*Gates v. Tex. Dep't of Protective & Regulatory Servs.,*
537 F.3d 404 (5th Cir. 2008) ............................................................................ 22, 23

*Goss v. Lopez,*
   419 U.S. 565 (1975) ........................................................................................23

*Hafer v. Malo,*
   502 U.S. 21 (1991) ............................................................................................8

*Hans v. Louisiana,*
   134 U.S. 1 (1890) ..............................................................................................8

*Hathaway v. Bazany,*
   507 F.3d 312 (5th Cir. 2007) ..........................................................................24

*Hooks v. Landmark Indus., Inc.,*
   797 F.3d 309 (5th Cir. 2015) ............................................................................7

*Idaho v. Coeur d'Alene Tribe of Idaho,*
   521 U.S. 261, 296 (1997) ..................................................................................9

*Jackson v. Stinchcomb,*
   635 F.2d 462 (5th Cir. 1981) .....................................................................11, 12

*Jacquez v. Pronunier,*
   801 F.2d 789 (5th Cir. 1986) .....................................................................20, 21

*Kentucky v. Graham,*
   473 U.S. 159 (1985) ..........................................................................................8

*Klocke v. Univ. of Tex. at Arlington,*
   938 F.3d 204 (5th Cir. 2019) .............................................................15, 16, 17

*Ky. Dep't of Corr. v. Thompson,*
   490 U.S. 454 (1989) ........................................................................................18

*Lozano v. Baylor Univ.,*
   408 F. Supp. 3d 861 (W.D. Tex. 2019) ...........................................................17

*Menchaca v. Chrysler Credit Corp.,*
   613 F.2d 507 (5th Cir. 1980) .........................................................................1, 7

*Messerschmidt v. Millender,*
   565 U.S. 535 (2012) ........................................................................................24

*Meza v. Livingston,*
   607 F.3d 392 (5th Cir. 2010) ..........................................................................18

*Moore v. Miss. Valley State Univ.,*
   871 F.2d 545 (5th Cir. 1989) ..........................................................................18

*Morin v. Caire,*
   77 F.3d 116 (5th Cir. 1996) ............................................................................24

*Mortensen v. First Federal Savings & Loan Ass'n,*
   549 F.2d 884 (3d Cir. 1977) ..........................................................................1, 7

*Murphy v. Kellar,*
   950 F.2d 290 (5th Cir. 1992) ..........................................................................20

*Muzquiz v. City of San Antonio,*
   520 F.2d 993 (5th Cir. 1975) ............................................................................8

*Myrick v. City of Dallas,*
   810 F.2d 1382 (5th Cir. 1987) ........................................................................10

*Nat'l Park Hosp. Ass'n v. Dep't of Interior,*
   538 U.S. 803 (2003) ..................................................................................12, 13

*Neuwirth v. La. State Bd. of Dentistry,*
   845 F.2d 553 (5th Cir. 1988) .....................................................................11, 12

*New Orleans Pub. Serv., Inc. v. Council of New Orleans,*
   833 F.2d 583 (5th Cir. 1987) ..........................................................................13

*O'Donnell v. Harris County,*
    892 F.3d 147 (5th Cir. 2018) ................................................................................ 11, 12

*Pearson v. Callahan,*
    555 U.S. 223 (2009) .................................................................................................. 24

*Pennhurst State Sch. & Hosp. v. Halderman,*
    465 U.S. 89 (1984) ...................................................................................................... 8

*Perry v. Sindermann,*
    408 U.S. 593 (1972) ............................................................................................ 11, 12

*Plummer v. Univ. of Hous.,*
    860 F.3d 767 (5th Cir. 2017) ............................................................................ 17, 18

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,*
    506 U.S. 139 (1993) .................................................................................................... 9

*Ramming v. United States,*
    281 F.3d 158 (5th Cir. 2001) ..................................................................................... 7

*Rios v. City of Del Rio, Tex.,*
    444 F.3d 417 (5th Cir. 2006) ................................................................................... 22

*Robinson v. TCI/US West Commc'ns Inc.,*
    117 F.3d 900 (5th Cir. 1997) ..................................................................................... 7

*Spec's Family Partners, Ltd. v. Nettles,*
    972 F.3d 671 (5th Cir. 2020) ..................................................................................... 9

*Sullivan v. Texas A&M Univ. Sys.,*
    986 F.3d 593 (5th Cir. 2021) ..................................................................................... 8

*Tapp v. Valenza,*
    No. H-11-2971, 2012 WL 3234230 (S.D. Tex. Aug. 6, 2012) ................................ 24

*Texas v. United States,*
    523 U.S. 296 (1998) .................................................................................................. 12

*Univ. of Tex. Med. Sch. at Hous. v. Than,*
    901 S.W.2d 926 (Tex. 1995) .................................................................................... 18

*Va. Office for Prot. & Advocacy v. Stewart,*
    563 U.S. 247 (2011) .................................................................................................... 9

*Verizon Md., Inc. v. Public Serv. Com'n of Md.,*
    535 U.S. 635 (2002) .................................................................................................... 9

*Walsh v. Hodge,*
    975 F.3d 475 (5th Cir. 2020) ................................................................................... 18

*Wernecke v. Garcia,*
    591 F.3d 386 (5th Cir. 2009) ................................................................................... 24

*White v. Pauly,*
    137 S. Ct. 548 (2017) ......................................................................................... 24, 25

*Wiley v. Tex. State Univ.,*
    No. 1:18-CV-930-RP, 2019 WL 317247 (W.D. Tex. 2019) ..................................... 13

*Will v. Mich. Dep't. of State Police,*
    491 U.S. 58 (1989) ...................................................................................................... 7

*Yusuf v. Vassar Coll.,*
    35 F.3d 709 (2d Cir. 1994) ....................................................................................... 15

## Statutes

20 U.S.C. § 1681 ............................................................................................................. 14

42 U.S.C. § 1983..........................................................................................7, 8, 20, 22

**Rules**

Federal Rule of Civil Procedure 12(b)(1)..............................................................1, 2, 6, 7
Federal Rule of Civil Procedure 12(b)(6)............................................................1, 2, 13, 14

Defendants The University of Texas Health Science Center at Houston (UTHealth or University); and Margaret McNeese, Deana Moylan, Sheela Lahoti, and Dana McDowelle, in their individual and official capacities (the Administrators) file this Motion to Dismiss Plaintiff's Original Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and Federal Rule of Civil Procedure 12(b)(6) and respectfully show as follows:

## I.   INTRODUCTION AND BACKGROUND

Plaintiff John Doe is a recent graduate of The University of Texas Health Science Center at Houston's McGovern Medical School (Medical School). On February 14, 2020, police arrested Plaintiff on charges of aggravated domestic assault. Plaintiff's on-again, off-again ex-girlfriend at that time was Jane Roe, who is also a medical student one year behind Plaintiff at UTHealth. The undisputed facts are that Roe called 911 complaining that Plaintiff, while under the influence of alcohol, had produced a firearm in her presence when she refused to leave the apartment. ECF 1, Pl.'s Compl., ¶ 64–66; Exhibit B, Decl. of Deana Moylan; Exhibit B-1, Investigation Summary at 5 & Attachment 1 at 1.[1]

In complaining about Defendants' alleged violation of his right to procedural due process, Plaintiff asks this Court to impose a guaranteed outcome ignoring an incident in which Plaintiff threatened another medical student with a handgun. Plaintiff asks the Court to render judgment that the University concluded the exact opposite of what the facts suggested and its investigation found. What Plaintiff asks is to summarily force the Medical School into a conclusion regarding Plaintiff's professionalism with which it disagrees and, in its professional and ethical judgment, has an obligation

---

[1] All exhibits attached to this Motion to Dismiss are offered only in support of Defendants' "factual attack" under Rule 12(b)(1) and are not intended to support any argument under the Rule 12(b)(6) portion of this Motion, which challenges Plaintiff's claims solely on the face of the Complaint. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (citing *Mortensen v. First Federal Savings & Loan Ass'n*, 549 F.2d 884, 891–92 (3d Cir. 1977)) ("A 'factual attack,' . . . challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.").

to communicate to institutions considering its students for residency placements. *See* Exhibit A, Decl. of Margaret McNeese, M.D.; Exhibit A-3, Letter of April 22, 2021.

Plaintiff's Original Complaint (the Complaint), ECF 1, does not assert a claim within this Court's subject-matter jurisdiction under Rule 12(b)(1) because UTHealth and the Administrators, to the extent the Administrators are sued in their official capacities for damages, are not "persons" under 42 U.S.C. § 1983 and are protected by sovereign immunity. Further, although the *Ex parte Young* doctrine allows state officials to be enjoined for claims for prospective relief, the doctrine does not apply here because Plaintiff's requested relief is the imposition of a retroactive, predetermined outcome and not for an order enjoining an ongoing violation of federal law. Plaintiff's claims are also outside the Court's subject-matter jurisdiction because his claims are unripe given that he has not responded to Defendants' offer for a hearing and has yet to allow the process to play out.

The Complaint also fails to state a claim for which relief may be granted under Rule 12(b)(6) for similar reasons. The remedy for any due process violation is for the Court to order the process the plaintiff was allegedly denied, not a summary outcome devoid of process and contrary to the academic institution's judgment. Further, Plaintiff's individual-capacity Section 1983 claims should be dismissed because the individual defendants are entitled to qualified immunity from suit in the absence of a violation of Plaintiff's clearly established constitutional or statutory rights.

Plaintiff's claims under Title IX are equally infirm. The erroneous-outcome claim fails because Plaintiff has not availed himself of UTHealth's offer of a hearing (nor has he articulated any doubt that he was responsible for committing the violation) and both the erroneous-outcome and selective-enforcement claims fail because Plaintiff was not discriminated against as a male under the University policy. For the same reasons Plaintiff's procedural due process claim must fail, his complaint of an erroneous outcome must also fail. Plaintiff cannot complain of an erroneous outcome when he

chooses not to pursue a hearing that could reverse the purportedly erroneous Title IX outcome about which he complains. And Plaintiff does not allege that both he and the complaining witness, Jane Roe, were subject to disparate treatment for the same allegations of misconduct because only Plaintiff brandished a firearm in the context of his dating relationship with Roe. Different treatment for different conduct does not infringe Title IX.

The Court therefore lacks subject-matter jurisdiction over Plaintiff's claims and the Complaint fails to state a claim; accordingly, the Court should dismiss the Complaint in its entirety.

## II.   STATEMENT OF FACTS

It is undisputed that Plaintiff is a recent graduate of The University of Texas Health Science Center at Houston's McGovern Medical School. After an incident on February 14, 2020 where Plaintiff held and waived a gun at a former girlfriend, Jane Roe, Plaintiff was found responsible for dating violence in violation of the University's Sexual Misconduct Policy. ECF 1 ¶¶ 64, 86; Exhibit B-1: Investigation Summary at 5, Attachment 1 at 1. In light of this incident, Plaintiff was placed on an interim suspension pending the results of the investigation. *Id.* ¶ 76. The University's Sexual Misconduct Policy, Handbook of Operating Procedures (HOOP) Policy 59 (as it existed at the time of the incident) defines "dating violence" as:

> Violence committed by a person who is or has been in a romantic or intimate relationship with the victim. The existence of such a relationship will be determined based on its length, type, and frequency of interaction of the persons involved. Dating violence includes physical or sexual abuse, or the threat of such abuse. It does not include acts covered under the definition of domestic (family) violence.

Exhibit A-1, Handbook of Operating Procedures, Policy 59 at p. 2. Prompted by Roe's complaint to UTHealth faculty, this matter was referred to Deana Moylan's office for investigation. Moylan, as Deputy Title IX Coordinator, and her team investigated by collecting statements from both Roe and Plaintiff, instructing the latter on confidentiality, submitting an investigation summary for both parties' review and comments, finalizing the investigation, and issuing a determination letter on April 15, 2020.

ECF 1 ¶¶ 70, 75, 77, 83; Exhibit B-2, Determination Letter. During the course of the investigation, in the presence of his lawyer, McNeese, and Moylan, **Plaintiff admitted that he waved the firearm at Roe** while she was in the apartment with him in an attempt to get her to leave. *Id.* ¶ 64; Ex. B-1 at 5, Attachment 1 at 1. In his response, Plaintiff said, "I recognize I had a dark moment and I do not minimize it." Ex. B-1, Attachment 1 at 1. The investigation concluded that Doe had violated HOOP 59. ECF 1 ¶ 86.

Although Plaintiff was suspended pending the investigation of the dating-violence incident involving Roe, UTHealth, through its Vice Dean for Admissions and Student Affairs Margaret McNeese, allowed Plaintiff to return to school in August 2020 provided he attend regular psychotherapy sessions, submit to quarterly reports on his treatment progress, and avoid contact with Roe. ECF 1 ¶¶ 8, 22, 110. Plaintiff did not pursue a hearing regarding the investigation or determination of a policy violation when he agreed to the terms of readmission at UTHealth. *Id.* ¶¶ 110–11, 113, 118. When Plaintiff was later informed that the incident would be noted as a professionalism concern in connection with his Medical Student Performance Evaluation, or MSPE (the "Dean's Letter") and shared with potential residency employers participating in the National Residency Match Program, he deployed his lawyers in an attempt to reverse the outcome of the investigation without a hearing and foreclose UTHealth from meeting its contractual and ethical duty to disclose professionalism and safety issues with its students. *See* Exhibit A-3, Letter of April 22, 2021. McNeese and Assistant Dean of Admissions and Student Affairs Dana McDowelle first discussed tentative language concerning the notation on August 14, 2020 and noted that the MSPE was still in draft form in the course of offering Plaintiff a hearing on the Title IX finding. *Id.* ¶ 113; Ex. A-3.

Once back in the fold of his studies at UTHealth, Doe maintained communications with

McNeese and McDowelle to ensure compliance with the return agreement. ECF 1 ¶ 113. In the process of responding to Plaintiff's questions about compliance with the return agreement, Plaintiff was directed to meet with Assistant Dean of Admissions and Student Affairs Sheela Lahoti regarding his residency scheduling. *Id.* ¶¶ 24, 125–26. According to Plaintiff, Lahoti advised him to shave his beard for interviews, spoke to him regarding his grades, discussed the expunction of his criminal matter, informed him that his graduation would not be deferred, advised him that he would not be eligible for the Alpha Omega Alpha Honors society due to the pending MSPE notation, and counseled him to pursue a general surgery residency. *Id.* ¶¶ 125–35. Plaintiff does not allege that Lahoti was involved in the decision to suspend him. *See id.* Subsequently, in connection with a meeting about the pending MSPE notation, McDowelle requested a signature from Plaintiff to indicate his understanding of the relevant rules, to which Plaintiff's advisor responded that he would not comply. *Id.* ¶¶ 143–44.

Because UTHealth believed Plaintiff did not wish to pursue a hearing in connection with the terms of readmission to the medical school in August 2020, a hearing was not held at that time. *Id.* ¶¶ 110–11, 113, 118; Ex. A-3. Prior to filing his suit, Plaintiff was given the opportunity to revisit the investigatory finding if he still wished to challenge the outcome. Ex. A-3. Instead of accepting this offer and pursuing a hearing with the Medical School, he sued Defendants.

Based on the above-described events, Plaintiff sues The University of Texas Health Science Center at Houston, University of Texas Board of Regents,[2] and the Administrators. Plaintiff claims the notation added to his MSPE and the probability that he will have to discuss the Title IX investigation to explain the notations will likely preclude him from matching with a competitive residency program of his choice and contends that Defendants' actions were in violation of the equitable requirements of proper enforcement of Title IX. ECF 1 ¶¶ 11–12, 185–215. Plaintiff further

---

[2] The Board of Regents' Motion to Dismiss is filed separately at the same time as this filing.

complains that, even though Defendants offered him a hearing to contest the HOOP 59 finding prior to his filing this lawsuit, his rights to procedural due process under the Fourteenth Amendment of the U.S. Constitution have also been violated. *Id.* ¶¶ 216–38.

## III.   NATURE AND STAGE OF THE PROCEEDING

On April 30, 2021, Plaintiff filed the Original Complaint against Defendants and requested service of summons. ECF 1. Defendants agreed to waive service of summons, making the deadline to respond July 6, 2021. Defendants respond to the Original Complaint by filing this Motion to Dismiss on behalf of UTHealth and the Administrators.

## IV.   STATEMENT OF THE ISSUES

1.      UTHealth and McNeese, Moylan, Lahoti, and McDowelle in their official capacities to the extent sued for damages are not "person[s]" subject to suit under 42 U.S.C. § 1983.

2.      The procedural due process claims under 42 U.S.C. § 1983 against UTHealth, and McNeese, Moylan, Lahoti, and McDowelle in their official capacities are barred by sovereign immunity.

3.      Plaintiff lacks standing to obtain the relief requested for the procedural due process claims.

4.      Plaintiff's Title IX erroneous-outcome and procedural due process claims are not ripe.

5.      Plaintiff fails to state a plausible claim for relief under Title IX for erroneous outcome or selective enforcement.

6.      Plaintiff fails to state a plausible claim for violation of his procedural due process rights.

7.      Defendants McNeese, Moylan, Lahoti, and McDowelle are entitled to dismissal of claims against them in their individual capacities because they are entitled to qualified immunity.

## V.   MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION

### A.   Standard of Review

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). When the court lacks the statutory or constitutional power to

adjudicate a case, the case is properly dismissed for lack of subject-matter jurisdiction. *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.*

Under a Rule 12(b)(1) jurisdictional challenge, the Court may consider any of the following: "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Robinson v. TCI/US West Comm'ns Inc.*, 117 F.3d 900, 904 (5th Cir. 1997). "A 'factual attack,' . . . challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (citing *Mortensen v. First Federal Savings & Loan Ass'n*, 549 F.2d 884, 891–92 (3d Cir. 1977)).

**B.      Arguments and Authorities**

**1.      UTHealth and the Administrators in their official capacities are not "persons" subject to suit under § 1983.**

The Court lacks subject-matter jurisdiction over Plaintiff's due process claims under 42 U.S.C. § 1983 to the extent brought against (1) UTHealth and (2) the Administrators in their official capacities for damages because neither UTHealth nor the Administrators in their official capacities are subject to suit under 42 U.S.C. § 1983. Section 1983 renders certain "persons" liable for deprivations of constitutional rights, but "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989). The question of whether the defendant is a "person" under 42 U.S.C. § 1983 is a jurisdictional inquiry. *City of Kenosha, Wisconsin v. Bruno*, 412 U.S. 507, 511–14 (1973) (characterizing the issue as a "jurisdictional question," when raised

for the first time on appeal); *Muzquiz v. City of San Antonio*, 520 F.2d 993, 996 (5th Cir. 1975) (noting that the question of whether the defendant could be sued under 42 U.S.C. § 1983 "touche[d] on the court's jurisdiction").

Here, UTHealth and the Administrators in their official capacities, to the extent the Administrators are sued for damages, are not "persons" that can be sued within the meaning of 42 U.S.C. § 1983. Therefore, the Court lacks subject-matter jurisdiction over Plaintiff's § 1983 claims as to these Defendants.

### 2. Plaintiff's suit does not meet the requirements of the *Ex parte Young* exception.

All claims against the Administrators in their official capacities and the Section 1983 claims against UTHealth should be dismissed because these claims are barred by sovereign immunity.[3] Absent a waiver of immunity by the State or through federal statute, sovereign immunity bars citizens from bringing suit against the states in federal court, regardless of the nature of the remedy sought. *See, e.g.*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–02 (1984); *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890). Sovereign immunity extends to all state officials sued in their official capacity because such suit is really one against the State itself. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Hafer v. Melo*, 502 U.S. 21, 25 (1991). The Supreme Court set out a narrow exception to sovereign immunity in *Ex parte Young*, 209 U.S. 123 (1908).

To fall under the *Ex parte Young* exception, the plaintiff must allege facts demonstrating a violation of a federal law, the suit "must be brought against individual persons in their official capacities as agents of the state," and "the relief sought must be declaratory or injunctive in nature

---

[3] "By its terms, the [Eleventh] Amendment does not apply. . . where a citizen sues his own State (or an agency of that State)." *Sullivan v. Texas A&M Univ. Sys.*, 986 F.3d 593, 596 n.1 (5th Cir. 2021). "Still, the Supreme Court has often used 'Eleventh Amendment immunity' as a synonym for the States' broader constitutional sovereign immunity." *Id.* "The phrase [Eleventh Amendment immunity] is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." *Alden v. Maine*, 527 U.S. 706, 713 (1999). As such, this motion shall consistently refer to the State's immunity as "sovereign immunity" and will internally alter quoted material to follow this convention.

and prospective in effect." *Aguilar v. Tex. Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). "In determining whether the *Ex parte Young* doctrine avoids [sovereign immunity's] bar to suit, a court need only conduct a 'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Public Serv. Com'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296, 298–299 (1997)). UTHealth is not an individual person under *Ex parte Young*, and Plaintiff's allegations as to the Administrators in their official capacities do not meet the requirements of *Ex parte Young* because he has not pleaded a claim for prospective relief and he cannot demonstrate an ongoing violation of federal law.

        **a.**       **Plaintiff asks the Court to enter improper declarations regarding alleged past misconduct.**

*Ex parte Young* does not apply to this case because, despite Plaintiff's conclusory recitations, the relief requested is retrospective in nature. Plaintiff wants this Court to enter declarations regarding allegations of past misconduct. ECF 1 ¶ 238 (asking Court to "reverse the outcome" of Defendants' prior investigation and "remove any record of the finding or Plaintiff's suspension"). Further, Plaintiff was provided the opportunity to submit his response to the Title IX investigation summary before a final determination was made. Ex. B-1; Ex. B-2. But the *Ex parte Young* doctrine does not permit declarations regarding past conduct. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) ("[T]he [Young] exception is narrow: It applies only to prospective relief, [and] does not permit judgments against state officers declaring that they violated federal law in the past."). Plaintiff does not allege any "ongoing violation of federal law" as necessary to invoke the *Young* doctrine. *See Spec's Family Partners, Ltd. v. Nettles*, 972 F.3d 671, 681 (5th Cir. 2020) (citing *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011)). Even if there was a breach of Plaintiff's right to procedural due process in the past by not affording him an opportunity to reverse the investigation

findings, Defendants' unconditional offer of a hearing to do just that means there is no ongoing violation under *Ex parte Young*.[4] Ex. A-3.

> **b.     There is no ongoing violation of federal law to enjoin.**

Even if Plaintiff had requested relief that is genuinely prospective in nature, *see Fontenot v. McCraw*, 777 F.3d 741, 752 (5th Cir. 2015) (suggesting in dicta that maintaining an erroneous record could possibly be susceptible to prospective injunctive relief), the injunctive relief he seeks is unavailable for a procedural due process claim. Plaintiff asks the Court to vacate the disciplinary finding and decision, expunge Plaintiff's academic record, clear the notation on his MSPE, and enjoin future investigations and adjudications of the sexual misconduct complaint that is the subject of this lawsuit. ECF 1 ¶ 236. These remedies are not available for a procedural due process claim because they assume that Plaintiff would have been vindicated had he received additional process. A *procedural* due process claim does not permit this assumption. *See Clarke v. Univ. of N. Tex.*, 993 F.2d 1544, 1993 WL 185814, at *3 (5th Cir. 1993) ("[Clarke] confuses right with remedy. His *right* was to obtain notice and 'some kind of hearing' in connection with the charges made against him. Procedural due process rights do not guarantee a particular outcome to a disciplinary proceeding but only assure that it is fairly conducted.). A determination that due process has not been followed does not allow the plaintiff to instantly obtain the desired result. Instead, "the remedy for a procedural due process claim is more process." *Doe v. Univ. of Tex. at Austin*, No. 1:18-cv-85-RP, 2019 WL 317247, at *3 (W.D. Tex. May 15, 2018).

Because it is the withholding of process that makes a past violation of due process "ongoing," the only available remedy for such a claim is providing the process withheld. *See Perry v. Sindermann*,

---

[4] *Cf. Myrick v. City of Dallas*, 810 F.2d 1382, 1388 (5th Cir. 1987) (holding an employee cannot "skip an available state remedy and then argue that the deprivation by the state was the inadequacy or lack of the skipped remedy"); *Galloway v. State of La.*, 817 F.2d 1154, 1158 (5th Cir. 1987) (holding "an employee cannot ignore the process duly extended to him and later complain he was not afforded due process").

408 U.S. 593, 603 (1972) (holding that if a professor did have a property interest in his employment, the proper remedy would be a hearing, not reinstatement); *O'Donnell v. Harris County*, 892 F.3d 147, 163 (5th Cir. 2018) (holding that the equitable remedy for the deficiency in the due process was to implement the constitutionally-necessary procedures); *Neuwirth v. La. State Bd. of Dentistry*, 845 F.2d 553, 560 n.12 (5th Cir. 1988) (noting that if the plaintiff's sole claim was procedural due process, he "would be entitled to no more than another hearing before the Board, because that is the remedy for due process violations"); *Jackson v. Stinchcomb*, 635 F.2d 462, 469 (5th Cir. 1981) (noting that "the remedy for a pretermination due process violation is to order reinstatement pending a hearing, or, where there is a post-termination hearing, to award back pay for the period between the dismissal and the conclusion of the post-termination hearing").

But Defendants have already offered Plaintiff the hearing that would afford the opportunity to cure any alleged "ongoing" due process violation. Ex. A-3. And, as such, any purported due process violation cannot be "ongoing." *See Perry*, 408 U.S. at 603. Because Plaintiff does not seek—and has thus far not availed himself of—additional process, his claim falls outside the scope of the *Ex parte Young* exception to sovereign immunity. Plaintiff has not met his burden to demonstrate the Court's subject-matter jurisdiction over the due process claims against UTHealth and the Administrators in their official capacities and the Court should accordingly dismiss those claims against those defendants.

### 3. Plaintiff lacks standing to obtain the injunctive relief sought for the procedural due process claim.

Alternatively, Plaintiff cannot meet the "redressability" requirements of standing for the injunctive relief sought for the procedural due process claim because that relief is not available for a due process claim. To establish standing, a plaintiff must show: (1) an actual or imminent, concrete and particularized "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant

(causation); and (3) that is likely to be redressed by a favorable decision (redressability). *Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). The injunctive relief requested by Plaintiff (at ECF 1 ¶ 236) begs the question by assuming that Plaintiff would have been found not responsible for a violation of HOOP 59 had he received the process to which he was allegedly entitled. *But see* Ex. B-1; Ex. B-2. Such remedies are unavailable for a *procedural* due process claim. *See Perry*, 408 U.S. at 603; *O'Donnell*, 892 F.3d at 163; *Neuwirth*, 845 F.2d at 560 n.12; *Jackson*, 635 F.2d at 469. As a favorable decision will not entitle Plaintiff to the injunctive relief requested, a favorable decision by this Court will not redress the due process injury—only additional process will remedy a process injury. And Defendants have already offered Plaintiff a hearing to cure the purported process deficiencies about which this lawsuit complains. Ex. A-3.

   4.   **Plaintiff's claims for procedural due process and erroneous outcome are not ripe.**

   Plaintiff's claims for denial of procedural due process and Title IX erroneous outcome both fail to meet the ripeness requirement to establish this Court's subject-matter jurisdiction because Plaintiff has refused to exercise the option to call a hearing before UTHealth's administration to challenge the finding that he engaged in dating violence under HOOP 59. "Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . [until a] decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967)). Determining whether an issue is ripe for judicial review requires considering "[t]he fitness of the issues for judicial decision and . . . the hardship to the parties of withholding court consideration." *Id.* at 809; *see Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (citation

omitted)).

A case is not ripe for adjudication if further factual development is required and the remaining questions in the case are not purely legal ones. *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 587 (5th Cir. 1987); *see also Wiley v. Tex. State Univ.*, No. 1:18-CV-930-RP, 2019 WL 317247, *4 (W.D. Tex. Jan. 24, 2019) ("A procedural due process claim 'is not ripe until the process complained of has reached its completion.' . . . 'Because the remedy for a procedural due process claim is more process, it makes little sense to adjudicate such a claim before the process is complete.'") (quoting *Doe*, 2019 WL 317247, at **3–4). Much of the harm Plaintiff alleges in the Complaint is contingent upon finalization of the Dean's Letter, an event that has not yet come to pass. The parties' dispute around the language contained in this letter involves the quintessential "abstract disagreement" that is not fit for judicial consideration at this time. *See Nat'l Park Hosp. Ass'n*, 538 U.S. at 807–08. As Plaintiff was advised in writing, the only avenue for UTHealth to revise its finding of a policy violation would be the determination of a hearing officer after further factual development in a hearing, which Plaintiff has been offered. Ex. A-3. And Plaintiff will face no hardship as a result of this Court withholding consideration because he has not alleged that he has failed to match with a residency program or been denied graduation. As a result, this dispute is not ripe for adjudication in this Court. *See New Orleans*, 833 F.2d at 587.

## VI.   MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While courts must accept all factual allegations as true, they "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Iqbal*, 556 U.S. at 679.

"Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Similarly, documents attached to a motion to dismiss "are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003); *see Walch v. Adjutant General's Dept. of Tex.*, 533 F.3d 289, 293–94 (5th Cir. 2008).

**B.     Arguments & Authorities**

> **1.     Plaintiff's Title IX claims against UTHealth should be dismissed for failure to state a claim for which relief may be granted.**

Both the erroneous-outcome and selective-enforcement claims should be dismissed because Plaintiff fails to plausibly allege a violation of Title IX under either theory. Under Title IX, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX requires a plaintiff to establish that an institution intentionally discriminated on the basis of the plaintiff's sex. *Fort v. Dallas Indep. Sch. Dist.*, 82 F.3d 414, 1996 WL 167072, at *3 (5th Cir. 1996).

> **a.     The Complaint makes no plausible allegations of an erroneous outcome.**

Despite Plaintiff's admission that he waved a gun in Roe's direction, ECF 1 ¶ 64, Plaintiff asks this Court to rule that the investigatory finding under HOOP 59 that Plaintiff violated UTHealth's

dating violence policy was erroneous. Courts recognize an "erroneous outcome" as one way in which a university can engage in sex discrimination in the context of a Title IX disciplinary hearing. *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994). To state a viable "erroneous outcome" claim, a plaintiff must (1) "allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding;" and (2) show that "gender bias was a motivating factor behind the erroneous finding." *Id.* at 715. "A plaintiff alleging an erroneous outcome must point to 'particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding'—for instance, 'a motive to lie on the part of a complainant or witnesses, [or] particularized strengths of the [disciplined student's] defense.'" *Klocke v. Univ. of Tex. at Arlington*, 938 F.3d 204, 210 (5th Cir. 2019) (quoting *Yusuf*, 35 F.3d at 715). "The plaintiff must also demonstrate a 'causal connection between the flawed outcome and gender bias.'" *Id.* (quoting *Yusuf*, 35 F.3d at 715).

Plaintiff alleges no facts casting an "articulable doubt" on UTHealth's finding under HOOP 59. *See id.* In paragraph 192, Plaintiff enumerates various reasons he asserts the outcome was erroneous, but none of these reasons disputes that Plaintiff brandished a firearm to scare Roe into leaving his apartment. *See* ECF 1 ¶ 192. Item a in Paragraph 192 states that the outcome was erroneous because Plaintiff stated after the fact that he did not intend to harm Roe, but a violation of HOOP 59 does not require intent to harm if there was intent to *threaten* harm, per HOOP 59's language.[5] Plaintiff does not allege that he did not threaten harm to Roe. Item b in Paragraph 192 is a blatant mischaracterization of HOOP 59 because the complainant and respondent need not have been

---

[5] HOOP 59 defines "dating violence" as:

> Violence committed by a person who is or has been in a romantic or intimate relationship with the victim. The existence of such a relationship will be determined based on its length, type, and frequency of interaction of the persons involved. Dating violence includes physical or sexual abuse, or the threat of such abuse. It does not include acts covered under the definition of domestic (family) violence.

Ex. A-1.

actively in a relationship at the time of the dating violence incident. Items c, d, and f appear to all argue that Roe lacks credibility because Plaintiff's hired psychiatrist[6] said Roe needed a psychiatric evaluation herself. But, again, Plaintiff does not dispute his use of a firearm to strike fear in Roe and Plaintiff does not allege that his hired psychiatrist treated Roe as a patient. Item e in Paragraph 192 appears to suggest that Plaintiff should be excused from facing allegations of dating violence because of a vague "mental health crisis," but HOOP 59 does not excuse dating violence simply because the responsible party suffers from some form of mental illness or is under the influence of alcohol. Finally, item h provides no support for Plaintiff's claim. If Dr. McNeese, in fact, made such a statement in a meeting with Plaintiff, she clearly misspoke. The University's determination that Plaintiff was found responsible for violation of HOOP 59 is well-documented. Further, if Plaintiff had been found not responsible for violating the sexual misconduct policy, there would obviously be little reason for Plaintiff to file a federal lawsuit.

Plaintiff's list of circumstances in Paragraph 193 purportedly suggesting discriminatory intent should also be rejected as failing to plausibly allege an erroneous-outcome cause of action. *See* ECF 1 ¶ 193. Item a in Paragraph 193, a reference to a 2014 OCR resolution, is outside of Defendants' control and should not be considered. Items b and c in Paragraph 193 involve innocuous stray commentary from McNeese and Lahoti that cannot be considered allegations plausibly establishing that any discipline was due to Plaintiff's gender as opposed to the fact that he waved a gun around in front of his ex-girlfriend. Items d–e in Paragraph 193 again attempt to shift the focus from Plaintiff to Roe even though Roe was not the one disciplined for using a firearm to scare her partner. Nothing in Paragraphs 192–93 plausibly alleges any articulable basis for doubting UTHealth's conclusion. *See Klocke*, 938 F.3d at 210. Plaintiff's erroneous outcome claim should be dismissed for failure to state a

---

[6] According to Plaintiff, he "underwent a complete psychiatric assessment with Dr. George Glass" based on "the recommendation of his advisor." ECF 1 ¶ 80.

claim for which relief may be granted.

        **b.**     **UTHealth has not engaged in selective enforcement**

"A selective enforcement claim needs to allege that either punishment or the decision to initiate enforcement proceedings was motivated by gender bias." *Klocke*, 938 F.3d at 213; *see also Plummer v. Univ. of Hous.*, 860 F.3d 767, 777 (5th Cir. 2017); *Lozano v. Baylor Univ.*, 408 F. Supp. 3d 861, 882 (W.D. Tex. 2019). "[M]ale plaintiffs must demonstrate selective enforcement by alleging facts that a female student was in sufficiently similar circumstances and that the female student was treated more favorably." *Doe v. Univ. of Tex. at Austin*, No. 1:19-CV-398-LY, 2019 WL 9076003, at *3 (W.D. Tex. Nov. 8, 2019).

Plaintiff's selective-enforcement claim fails because Roe, who Plaintiff incorrectly states is similarly situated to himself, did not use a gun to threaten violence against anyone—only Plaintiff did that. While Plaintiff accuses Roe of violating UTHealth's no-contact order, this circumstance is a far cry from the use of a firearm to intimidate one's partner in the context of a dating relationship under HOOP 59. Thus, there is no plausible allegation that Plaintiff and Roe experienced "sufficiently similar circumstances" for purposes of a selective-enforcement cause of action under Title IX, and Plaintiff's attempts to equate his conduct with Roe's should be rejected. *See Lozano*, 408 F. Supp. 3d at 882; *Doe*, 2019 WL 9076003, at *3. Further, Plaintiff makes no allegation that he was disciplined for violating the no-contact order, and he admits that Roe was advised to "stay away" by McNeese. ECF 1 ¶ 139. But, ultimately, whether Roe was disciplined or not for violation of the no-contact order has nothing to do with the propriety of disciplining Plaintiff for violating HOOP 59. Plaintiff also points to no other similarly situated female students who were treated more favorably. The Court should dismiss Plaintiff's selective-enforcement claim.

        **2.**     **Plaintiff fails to state a plausible claim for denial of procedural due process.**

The threshold requirement of any due process claim is the government's deprivation of a

liberty or property interest. *DePree v. Saunders*, 588 F.3d 282, 289 (5th Cir. 2009). "The Supreme Court has adopted a two-step analysis to examine whether an individual's procedural due process rights have been violated." *Meza v. Livingston*, 607 F.3d 392, 399 (5th Cir. 2010). "The first question 'asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Id.* (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

Here, Plaintiff was not expelled from the university, but rather suspended for six months during the pendency of the investigation based on legitimate concerns about his mental health and the risk he might pose to himself or others. From Defendants' perspective, this was a safety issue more than a disciplinary issue. Plaintiff was later allowed to return to school and complete his classes in time to graduate in Spring 2021 like the rest of his class.

"Generally, the amount of process due in university disciplinary proceedings is based on a sliding scale that considers three factors: (a) the student's interests that will be affected; (b) the risk of an erroneous deprivation of such interests through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (c) the university's interests, including the burden that additional procedures would entail." *Plummer*, 860 F.3d at 773. Here, Plaintiff has a liberty interest in higher education. *Id.* (citing *Univ. of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 929–30 (Tex. 1995) (recognizing a liberty interest in graduate higher education under the Texas Constitution)). But, on the other hand, UTHealth has "a strong interest in the 'educational process,' including maintaining a safe learning environment for all its students, while preserving its limited administrative resources." *See id.*; *Walsh v. Hodge*, 975 F.3d 475, 484 (5th Cir. 2020) (recognizing the interest in "preserving the University's resources to serve its primary function of education" and "providing a safe environment for other members of the faculty and student body" in the context of a professor

accused of sexual harassment). In analyzing the risk of erroneous deprivation through the process used, the Court should conclude that the Complaint states no facts creating a plausible inference that the outcome was erroneous for the reasons argued in Section V.B.1.a, *supra*. Plaintiff has also effectively waived his right to complain of a violation of procedural due process, and he does not establish a valid Section 1983 claim as to any of the Administrators.

### a. Plaintiff effectively waived his procedural due process claims.

To the extent Plaintiff has refused UTHealth's offer to participate in a hearing regarding the finding that Plaintiff violated HOOP 59, and instead chose to file this lawsuit, Plaintiff has effectively waived his claims regarding a violation of due process. Due process principles mandate that a plaintiff avail himself of the process offered to establish a plausible claim that his procedural due process rights were violated. *E.g.*, *Babin v. Breaux*, 587 F. App'x 105, 111–12 (5th Cir. 2014). Plaintiffs can only escape this requirement if the processes are either "unavailable or patently inadequate." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).

Plaintiff agreed in writing to the requirements for his reinstatement at UTHealth without pursuing a hearing following his return from suspension. ECF 1 ¶¶ 110–11, 113, 118. Even though Plaintiff declined to sign a waiver of a hearing regarding his initial suspension in March of 2020, ECF 1 ¶ 78, his later acquiescence to the conditions of his reinstatement showed that he did not wish to revisit the issue at the time of his return in August of 2020 because he was "eager to begin classes again." *Id.* ¶ 110. Certainly, Plaintiff's refusal to accept UTHealth's offer of a hearing prior to filing his suit should be construed as a waiver of his right to a hearing for the reasons argued *supra*. The constitutional minima of notice and the opportunity to be heard have been afforded here; it is up to Plaintiff to take UTHealth up on the opportunity it afforded him for a hearing to challenge its HOOP 59 finding.

### b.   Lahoti should be dismissed as a Section 1983 defendant.

No claim under 42 U.S.C. § 1983 is stated as to Lahoti because nothing Plaintiff alleges as to Lahoti creates a plausible inference that she personally violated his constitutional rights. "[A] plaintiff bringing a section 1983 action must specify the personal involvement of each defendant." *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992). "In order to successfully plead a cause of action in § 1983 cases, plaintiffs must enunciate a set of facts that illustrate the defendants' participation in the wrong alleged." *Jacquez v. Pronunier*, 801 F.2d 789, 793 (5th Cir. 1986). Here, Plaintiff has not stated a claim against Lahoti because he has not pleaded facts plausibly alleging that Lahoti violated Plaintiff's right to due process.

The only allegations regarding Lahoti are that Plaintiff met with her for counseling regarding his residency prospects, ECF 1 ¶¶ 24, 125–35, and Plaintiff makes no allegation that Lahoti was involved in the decision to suspend him from the Medical School. Nor does Plaintiff allege that Lahoti took any action to deprive him of any processes he may have otherwise been afforded. Lahoti's directives as to Plaintiff's graduation timing, her advice regarding residency, and disqualifying Plaintiff from an honor society have no bearing on whether Plaintiff was afforded due process in any disciplinary proceedings. As such, Plaintiff fails to state a plausible claim for relief as to Lahoti and she should be dismissed from this suit. *See Jacquez*, 801 F.2d at 793.

### c.   McDowelle should be dismissed as a Section 1983 defendant.

For similar reasons, Plaintiff states no plausible claim against McDowelle. The only references to McDowelle in the Complaint are that she participated in discussions with Plaintiff involving the return-to-school agreement and the tentative language in the Dean's Letter,[7] and that she requested

---

[7] By Plaintiff's own admission, the MSPE is meant to record academic performance of the medical student. ECF 1 at p. 2 n.2. Stating the facts as to a student's violation of University policy is not a disciplinary measure or punishment. As such, courts routinely decline to question decisions that require "expert evaluation of cumulative information . . . not readily adapted to the procedural tools of judicial or administrative decisionmaking." *See Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 89–90 (1978). UTHealth and the Administrators' observation that Plaintiff may have professionalism issues

his signature on a form indicating his understanding of the rules regarding the MSPE, which he refused to sign. ECF 1 ¶¶ 113, 143–44. None of this creates a plausible inference that McDowelle took any action under color of law to deny Plaintiff his due process rights. *See Jacquez*, 801 F.2d at 793. McDowelle should be dismissed as a party to this suit.

> ### d. Moylan is alleged to have done nothing more than follow UTHealth procedure.

As to Moylan, Plaintiff alleges nothing more than that she followed the procedures for investigating a policy violation under HOOP 59. According to Plaintiff, Moylan instructed the parties regarding confidentiality obligations and took statements from both sides regarding the accusations, giving Plaintiff the opportunity to present his response to the accusations and contradict the accuracy of the summary. ECF 1 ¶¶ 70, 75, 77, 83. Plaintiff alleges that Moylan asked Plaintiff about his nationality and religion in order to assess the veracity of comments made by Roe regarding their encounter and that this was somehow inappropriate. *Id.* ¶ 71. But Plaintiff does not assert any causes of action for religious or national-origin discrimination in his Complaint. Therefore, his efforts to muddy the waters create no plausible allegations of *gender* discrimination and should be rejected.

Further, Plaintiff does not allege that Moylan failed to follow any procedures in carrying out the investigation—his only complaint about the procedures is that Moylan allegedly did not discount Roe's credibility. *Id.* ¶ 85. But, as explained in Section V.B.1.a, *supra*, Plaintiff's attempts to put Roe on trial while making no plausible allegation rebutting the fact that Plaintiff threatened Roe with a gun are inconsequential. Plaintiff makes no material allegation regarding the veracity of the core facts that led Moylan to the determination regarding dating violence—he merely quibbles with details regarding Roe's statements about their romantic relationship prior to the night of February 14, 2020, none of

---

affecting his ability to treat patients, as noted in the Dean's Letter, should be treated as a matter within their expert judgment. *See id.*

which casts doubt on Plaintiff's responsibility in committing dating violence under HOOP 59. *See id.* ¶ 83 (Roe allegedly lied about Plaintiff being a drug user, initiating reconciliation efforts in prior weeks, and the timing of gift purchases). Even accepting these allegations as true, they create no plausible inference that Moylan violated Plaintiff's due process rights in concluding Plaintiff violated HOOP 59. Further, Moylan had no part in determining whether or not Plaintiff was afforded a hearing. Under HOOP 59 as it existed at the time, Moylan's role ended with her referral of her determination to McNeese. *See* Ex. A-1.

Finally, if Plaintiff wanted the opportunity to cross-examine the witnesses in this case, he should have accepted McNeese's offer to conduct a hearing before filing this lawsuit. *See Doe v. Univ. of Cincinnati*, 872 F.3d 393, 402–04 (6th Cir. 2017) (explaining importance of cross examination). As a result, Plaintiff has not plausibly alleged a violation of his constitutional rights under Section 1983 and his claims as to Moylan should be dismissed for failure to state a claim.

e.     **Plaintiff does not plausibly allege that McNeese is liable under a supervisory liability theory.**

For reasons that have already been presented regarding McNeese's offer of a hearing, Plaintiff's allegations fail to state a claim that McNeese violated his constitutional rights, but even if Plaintiff had not waived his hearing rights as stated *supra*, he fails to state a claim that McNeese is liable as a supervisor under 42 U.S.C. § 1983. To establish supervisor liability, the supervisor must have "affirmatively participate[d]" in the alleged unconstitutional misconduct or "implement[ed] unconstitutional policies that causally result in the constitutional injury." *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008). Moreover, supervisor liability cannot be established "if there is no underlying constitutional violation." *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006).

Plaintiff concedes that, as the Vice Dean for Admissions and Student Affairs and as the Title

IX Coordinator for UTHealth, McNeese was responsible for oversight of UTHealth's Title IX compliance, but that she recused herself from Plaintiff's case. ECF 1 ¶¶ 22, 74. Plaintiff then makes the wholly conclusory allegation that she "continued to be involved at every step of the investigation, acting as the **sole** investigator and executioner in the process." *Id.* (emphasis added). But Plaintiff's statements bely his admissions about Moylan's role in leading the investigation and the fact that he has sued Moylan individually under Section 1983; therefore, his allegations regarding McNeese's involvement should be rejected by this Court. *See Gates*, 537 F.3d at 435.

McNeese's notification to Plaintiff that he was suspended in light of his use of a firearm to intimidate Roe on February 14, 2020, for which he was arrested, was an appropriate safety measure under the due process clause. *See Goss v. Lopez*, 419 U.S. 565, 582 (1975) ("Students whose presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process may be immediately removed from school."); ECF 1 ¶¶ 64, 66. Thus, until Plaintiff's presence in the school was determined not to pose a danger to any of the other students or other hospital professionals involved in rotations, the Administrators were perfectly within the bounds of Plaintiff's constitutional rights to keep him from the school or other UTHealth facilities until the investigation was completed and he underwent psychiatric evaluation. Plaintiff has not plausibly alleged facts leading to a reasonable inference that McNeese should be found liable under Section 1983 and the Court should dismiss his claims against her.

### 3. The Administrators are entitled to qualified immunity from Plaintiff's procedural due process claims under § 1983.

Qualified immunity shields government officials performing discretionary functions "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The purpose of qualified immunity is to "give[] government officials breathing room to make reasonable but

mistaken judgments, and protect[] all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). The standard serves to protect constitutional rights, while allowing government officials to effectively perform their duties. *Davis v. Scherer*, 468 U.S. 183, 195 (1984). Employees of UTHealth are entitled to qualified immunity in the reasonable performance of their duties. *E.g.*, *Tapp v. Valenza*, No. H-11-2971, 2012 WL 3234230, at *7 (S.D. Tex. Aug. 6, 2012).

Once a defendant sued in his or her individual capacity as a government official has pleaded a good-faith entitlement to qualified immunity, "the burden shifts to the plaintiff to rebut it." *See Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007). Abrogation of qualified immunity traditionally requires a two-tier analysis. *See Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996); *Burns-Toole v. Byrne*, 11 F.3d 1270, 1274 (5th Cir. 1994). Plaintiff must prove (1) a violation of a clearly established constitutional right by the defendant, and (2) that defendant's conduct was not objectively reasonable in light of clearly established law at the time of the events giving rise to the suit. *Morin*, 77 F.3d at 120; *Burns-Toole*, 11 F.3d at 1274. Courts are permitted to exercise their sound discretion in determining which of the two prongs to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A right is clearly established if the law is clear in a particularized sense, such that a reasonable official would be put on notice that her conduct is unlawful and violates the right in question. *Wernecke v. Garcia*, 591 F.3d 386, 392–93 (5th Cir. 2009). The Supreme Court recently "reiterate[d] the longstanding principle that clearly established law should not be defined at a high level of generality," but must instead be "particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal quotations omitted). "Otherwise, plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* (internal quotations omitted).

The Administrators hereby assert qualified immunity from suit. For reasons explained in more detail above, see *infra* Parts V.B.2 and VI.B.2, which the Administrators incorporate by reference as if fully set forth in this section on qualified immunity, Plaintiff has not plausibly alleged the violation of his clearly established constitutional rights by any of the Administrators. Nor can Plaintiff demonstrate that the conduct of any of the Administrators was objectively unreasonable in light of the clearly established law.

## VII.   CONCLUSION AND PRAYER FOR RELIEF

Plaintiff has neither established this Court's subject-matter jurisdiction to hear this case under Rule 12(b)(1) nor stated a claim for which relief may be granted under Rule 12(b)(6). Accordingly, Defendants UTHealth and the Administrators pray that the claims against them be dismissed and that Plaintiff take nothing by his suit, and for any such further relief to which they may be justly entitled.

Date: July 6, 2021                    Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division

/s/   *Cory A. Scanlon*
CORY A. SCANLON
Attorney-in-Charge
State Bar No. 24104599
Southern District No. 3504922
BENJAMIN DOWER
State Bar No. 24087397
Southern District No. 3071131
General Litigation Division
Office of the Attorney General
General Litigation Division
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone (512) 463-2120
Facsimile: (512) 320-0667
cory.scanlon@oag.texas.gov
benjamin.dower@oag.texas.gov

COUNSEL FOR DEFENDANTS

## CERTIFICATE OF FILING AND SERVICE

On July 6, 2021, the undersigned attorney filed the foregoing document with the Clerk of the Court for the Southern District of Texas and served a true and correct copy of the foregoing to all counsel of record in compliance with the Federal Rules of Civil Procedure.

Andrew T. Miltenberg, Esq.
Tara J. Davis, Esq.
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
tdavis@nmllplaw.com

Amir Halevy, Esq.
Southern District No. ___
JORDAN, LYNCH & CANCIENNE PLLC
1980 Post Oak Blvd, Suite 2300
Houston, Texas 77056
(713) 955-4021 (direct line)
(713) 955-9644 (facsimile)
ahalevy@jlcfirm.com

COUNSEL FOR PLAINTIFF

_/s/ Cory A. Scanlon_
CORY A. SCANLON
Assistant Attorney General