IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN DOE,<br>　　*Plaintiff,*<br><br>　　v.<br><br>UNIVERSITY OF TEXAS HEALTH<br>SCIENCE CENTER AT HOUSTON,<br>UNIVERSITY OF TEXAS BOARD OF<br>REGENTS, MARGARET MCNEESE, in her<br>individual and official capacity, DEANA<br>MOYLAN, in her individual and official<br>capacity, SHEELA LAHOTI, in her individual<br>and official capacity, and DANA<br>MCDOWELLE, in her individual and official<br>capacity,<br>　　*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 4:21-cv-01439 |

---

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S ORIGINAL COMPLAINT**

---

NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500

-and-

JORDAN, LYNCH & CANCIENNE PLLC
1980 Post Oak Blvd, Suite 2300
Houston, Texas 77056
(713) 955-4021

COUNSEL FOR PLAINTIFF

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………………..iii

I.      INTRODUCTION AND BACKGROUND..................................................................1

II.     STATEMENT OF FACTS...........................................................................................2

III.    NATURE AND STAGE OF THE PROCEEDINGS ...................................................3

IV.     STATEMENT OF THE ISSUES..................................................................................4

V.      ARGUMENT- Plaintiff's Complaint Establishes Subject Matter Jurisdiction
        Pursuant to Fed. R. Civ. P. 12(b)(1) ...........................................................................4

        A.      Standard of Review.............................................................................................4

        B.      Arguments and Authorities ................................................................................5

                i.      UT Health Administrators are subject to suit under 42 U.S.C. §1983..............5

                ii.     Ex Parte Young is applicable. ...........................................................................5

                        a.      Plaintiff's action is properly brought against state officers
                                acting in their official capacities. ...............................................6

                        b.      Plaintiff seeks prospective relief for ongoing violations.......................7

                iii.    Plaintiff has standing to pursue the relief requested...........................................9

                iv.     Plaintiff's claims are ripe for adjudication. .......................................................11

VI.     ARGUMENT- Plaintiff States Claims Upon Which Relief May be Granted
        Pursuant to Fed. R. Civ. P. 12(b)(6) .........................................................................12

        A.      Standard of Review............................................................................................12

        B.      Arguments and Authorities ................................................................................13

                i.      Plaintiff Plausibly Alleges Violations of Title IX Against UT Health............13

                        a.      Plaintiff adequately pleads an erroneous decision was
                                motivated by gender bias...........................................................13

                                1.)     Facts casting doubt on the accuracy of the outcome. ............13

          2.)      Gender bias was a motivating factor. ........................................15

        b.      Plaintiff adequately alleges that UT Health engaged in selective enforcement. ..........................................................................17

    ii.      Plaintiff Plausibly Alleges a Fourteenth Amendment Procedural Due Process Claim Pursuant to 42 U.S.C. § 1983. ...........................................17

        a.      UT Health deprived Plaintiff of his due process rights. .....................18

            1.)      Imposition of interim suspension without a hearing.............19

            2.)      Failure to provide a hearing on the charges against Doe.......20

            3.)      Denial of cross-examination. ......................................................21

            4.)      Denial of impartial decision-maker. ..........................................22

            5.)      Denial of opportunity to appeal. ...............................................22

    iii.      The Administrators are not entitled to qualified immunity. ............................23

VII.    CONCLUSION ...........................................................................................25

## TABLE OF AUTHORITIES

Cases

*Abarca v. Chevron U.S., Inc.*,
  75 F. Supp. 2d 566 (E.D. Tex. 1999) .................................................................................1

*Alvarado v. Litscher*,
  267 F.3d 648 (7th Cir. 2001) ...........................................................................................25

*Ameritech Corp. v. McCann*,
  297 F.3d 582 (7th Cir. 2002) .............................................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .........................................................................................................12

*Bell v. Hood*,
  327 U.S. 678 (1946) ...........................................................................................................1

*Board of Curators of University of Missouri v. Horowitz*,
  435 U.S. 78 (1978) ...........................................................................................................18

*Carnaby v. City of Houston*,
  636 F.3d 183 (5th Cir. 2011) ...........................................................................................24

*Clark v. Tarrant Cnty., Tex.*,
  798 F.2d 736 (5th Cir. 1986) .............................................................................................1

*Cox v. City of Dallas, Tex.*,
  256 F.3d 281 (5th Cir. 2001) .............................................................................................7

*Davis v. Alaska*,
  415 U.S. 308 (1974) .........................................................................................................21

*Deutsch v. Annis Enterprises, Inc.*,
  882 F.3d 169 (5th Cir. 2018) ...........................................................................................10

*Doe v. Baum*,
  903 F.3d 575 (6th Cir. 2018) ...........................................................................................21

*Doe v. Cummins*,
  662 F. App'x 437 (6th Cir. 2016) .......................................................................................8

*Doe v. Purdue Univ.*,
  928 F.3d 652 (7th Cir. 2019) ...................................................................................8, 9, 25

*Doe v. Univ. of Cincinnati,*
   872 F.3d 393 (6th Cir. 2017) ...................................................................22

*Edelman v. Jordan,*
   415 U.S. 651 (1974) ............................................................................ 6, 7

*Elliott v. Hinds,*
   786 F.2d 298 (7th Cir.1986) .....................................................................8

*Ex Parte Young,*
   209 U.S. 123 (1908) .................................................................... 1, 4, 5, 6

*Fitzgerald v. Barnstable Sch. Comm.,*
   555 U.S. 246 (2009) ..............................................................................10

*Flaim v. Med. Coll. of Ohio,*
   418 F.3d 629 (6th Cir. 2005) ...................................................................21

*Flint v. Dennison,*
   488 F.3d 816 (9th Cir. 2007) .....................................................................8

*Fontenot v. McCraw,*
   777 F.3d 741 (5th Cir. 2015) ...................................................................11

*Freedom From Religion Found. v. Abbott,*
   955 F.3d 417 (5th Cir. 2020) ................................................................. 5, 6

*Freedom From Religion Found., Inc. v. Mack,*
   2021 WL 2887861 (5th Cir. July 9, 2021) ...................................................6

*Gentry v. Duckworth,*
   65 F.3d 555 (7th Cir. 1995) ....................................................................23

*Goldberg v. Kelly,*
   397 U.S. 254 (1970) ..............................................................................21

*Goss v. Lopez,*
   419 U.S. 565 (1975) ..............................................................................18

*Haidak v. Univ. of Massachusetts-Amherst,*
   933 F.3d 56 (1st Cir. 2019) .....................................................................19

*Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.,*
   143 F.3d 1006 (5th Cir.1998) ....................................................................5

*Hudson v. Board of Regents of Texas Southern University,*
   2008 WL 2754622 (S.D. Tex. July 14, 2008) ...............................................7

iv

*In re Eckstein Marine Serv. LLC.,*
 672 F.3d 310 (5th Cir. 2012) ....................................................................................................1

*In re Eckstein Marine Serv., LLC,*
 No. CIV.A. H-10-0156, 2010 WL 3303640 (S.D. Tex. Aug. 19, 2010)................................1

*JOHN DOE, Plaintiff, v. COLUMBIA UNIVERSITY, Defendant,*
 2021 WL 3292591 (S.D.N.Y. Aug. 1, 2021) .......................................................................20

*Jones v. Lowndes County, Mississippi,*
 678 F.3d 344 (5th Cir. 2012)................................................................................................24

*Klocke v. Univ. of Texas at Arlington,*
 938 F.3d 204 (5th Cir. 2019), *cert. denied,* 140 S. Ct. 1268, 206 L. Ed. 2d 256 (2020) ........13

*Lozano v. Baylor Univ.,*
 408 F.Supp.3d 861 (W.D. Tex. 2019)...................................................................................17

*Lujan v. Defs. of Wildlife,*
 504 U.S. 555 (1992) ...............................................................................................................10

*Marshall v. Jerrico, Inc.,*
 446 U.S. 238 (1980) ........................................................................................................ 9, 22

*Mathews v. Eldridge,*
 *424 U.S. 319 (1976)*..........................................................................................................18, 21

*Oliver v. University of Texas Southwestern Medical School,*
 2019 WL 536376 (N.D. Tex. Feb. 11, 2019) ...............................................................passim

*Oppenheimer v. Prudential Securities Inc.,*
 94 F.3d 189 (5th Cir.1996) ....................................................................................................13

*Pederson v. Louisiana State Univ.,*
 213 F.3d 858 (5th Cir. 2000) ................................................................................................10

*Perez v. Texas A & M Univ. at Corpus Christi,*
 2013 WL 6230353 (S.D. Tex. Dec. 2, 2013), *aff'd,* 589 F. App'x 244 (5th Cir. 2014) ........6

*Plummer v. Univ. of Houston,*
 860 F.3d 767 (5th Cir. 2017*)*................................................................................................ 8, 18

*Ramming v. United States,*
 281 F.3d 158 (5th Cir. 2001) .............................................................................................5, 13

*Santerre v. Agip Petroleum Co.,*
    45 F. Supp. 2d 558 (S.D. Tex. 1999) ........................................................................1

*Shaboon v. Duncan,*
    252 F.3d 722 (5th Cir. 2001) .................................................................................18

*Shah v. Univ. of Texas Sw. Med. Sch.,*
    54 F. Supp. 3d 681 (N.D. Tex. 2014) ....................................................................21

*Shepard v. Irving,*
    77 F. App'x 615 (4th Cir. 2003) .............................................................................8

*Taylor v. Dam,*
    244 F.Supp.2d 747 (S.D. Tex. 2003) ......................................................................1

*Union Pac. R.R. Co. v. Harris Cnty., Tex.,*
    790 F. Supp. 2d 568 (S.D. Tex. 2011) ....................................................................1

*United States v. W.T. Grant Co.,*
    345 U.S. 629 (1953) ..............................................................................................11

*Wiley v. Texas State Univ.,*
    2019 WL 317247 (W.D. Tex. Jan. 24, 2019) ......................................................8, 9

*Williamson v. Tucker,*
    645 F.2d 404 (5th Cir. 1981) ...............................................................................1, 5

*Winnick v. Manning,*
    460 F.2d 545 (2d Cir. 1972) ..................................................................................21

*Yusuf v. Vassar College,* 3
    5 F.3d 709 (2d Cir. 1994) ........................................................................13, 14, 15

*Zollicoffer v. Livingston,*
    169 F. Supp. 3d 687 (S.D. Tex. 2016) ....................................................................8

Rules

Fed. R. Civ. P. 12 ....................................................................................................passim
Fed. R. Civ. P. 15 ..........................................................................................................26
Fed. R. Civ. P. 56 ............................................................................................................1

Statutes

20 U.S.C. § 1681 ......................................................................................................1, 10
42 U.S.C. § 1983 .....................................................................................................passim

Other Authorities

A. Scalia, *Reading Law: The Interpretation of Legal Texts* (West Pub. 2012) ....................................................16

Education Amendments of 1972, § 901(a) ...........................................................................................10

R. Katzman, *Judging Statutes* (Oxford Univ. Press 2014) ...........................................................................16

R.L. Shibley, *Twisting Title IX* (2016) ...........................................................................................16

## I.    INTRODUCTION AND BACKGROUND

Plaintiff John Doe ("Plaintiff" or "Doe") submits this opposition to Defendants The University of Texas Health Science Center at Houston ("UT" or the "University"), Margaret McNeese, Deana Moylan, Sheela Lahoti, and Dana McDowelle's Motion to Dismiss Plaintiff's Original Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiff's Complaint (ECF No. 1) adequately pleads claims for relief that satisfy subject matter jurisdictional requirements and plausibly alleges claims for relief under 42 U.S.C. § 1983 Fourteenth Amendment Procedural Due Process and sex discrimination in violation of 20 U.S.C. § 1681.

Accepting Plaintiff's factual allegations and the reasonable inferences therefrom as true, Plaintiff has demonstrated that Defendants' disciplinary proceeding lacked due process, was gender biased and resulted in an erroneous finding of responsibility against Plaintiff, an unwarranted suspension, and a permanent notation on his transcript and Medical Student Performance Evaluation Letter ("MSPE"). The *Ex parte Young* doctrine is applicable here because Doe seeks an award of prospective injunctive relief in the form of expungement of Plaintiff's disciplinary record and removal of the disciplinary notation from his MSPE.

Defendants' brief includes a brazen mischaracterization of the facts underlying the disciplinary proceeding in an effort to justify its erroneous finding against Doe.[1] Defendants also mislead the Court in an attempt to circumvent Federal Rule of Evidence 408 on settlement discussions, when claiming

---

[1] Defendants attach external documentation under the guise of a "factual attack" on Plaintiff's claims pursuant to 12(b)(1). However, in actuality Defendants improperly submit such documentation in an effort to color the court's perspective and present a counter-narrative to the facts as alleged in the Complaint. In a factual attack, the court's power to make factual findings and evidentiary determinations under Rule 12(b)(1) "turns on whether the jurisdictional challenge also implicates the merits of the plaintiff's cause of action." *Union Pac. R.R. Co. v. Harris Cnty., Tex.*, 790 F. Supp. 2d 568, 573 (S.D. Tex. 2011); *Taylor v. Dam,* 244 F.Supp.2d 747, 753 (S.D. Tex. 2003). In cases where the basis of federal jurisdiction implicates an element of the cause of action, as is the case here, the Supreme Court has established a strict standard for dismissal. *Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736, 741 (5th Cir. 1986); *Bell v. Hood,* 327 U.S. 678 (1946). In such cases, the court should "first find that jurisdiction exists and then deal with the objection as a direct attack on the merits of the plaintiff's claim." *Santerre v. Agip Petroleum Co.*, 45 F. Supp. 2d 558, 566–67 (S.D. Tex. 1999); *Union Pac.*, 790 F. Supp. 2d at 573; *Abarca v. Chevron U.S.*, *Inc.*, 75 F. Supp. 2d 566, 569 (E.D. Tex. 1999). Accordingly, the motion must be analyzed under Rule 12(b)(6) or Rule 56. *Id.*; *In re Eckstein Marine Serv., LLC*, 2010 WL 3303640, at *1 (S.D. Tex. Aug. 19, 2010), *aff'd sub nom. In re Eckstein Marine Serv. LLC.*, 672 F.3d 310 (5th Cir. 2012).

the University's belated offer of a disciplinary hearing, made in response to pre-suit negotiations, cures their past misconduct. It does not. The offer of "additional process" *after* a procedurally flawed investigation and finding does not negate the resultant harm, nor does it defeat this Court's jurisdiction. For the reasons discussed below, Defendants' Motion must be denied.

## II.   <u>STATEMENT OF FACTS</u>[2]

Doe enrolled at UT Health in the fall of 2017, with a goal of pursuing a career in orthopedic surgery. (ECF No. 1 at ¶ 54). Doe began dating fellow classmate Jane Roe ("Roe") on October 27, 2018. (ECF No. 1 at ¶ 56). On February 14, 2020, Doe called Roe and threatened to take his own life. (ECF No. 1 at ¶ 62). He got an unloaded pistol, which he put next to him as he sat on the couch. (*Id.*) Suddenly, Roe entered Doe's apartment, unannounced and without his consent, by using a key that she previously refused to return to Doe. (ECF No. 1 at ¶ 63). When Roe entered his apartment, Doe was sitting on the couch with the unloaded pistol beside him. (ECF No. 1 at ¶ 64). Doe asked Roe to leave, but she refused. (*Id.*) Doe then waved the unloaded gun to point to the door behind Roe, and told Roe to leave, which she did. (*Id.*) He never intended to hurt himself or Roe, and never intended nor threatened to harm Roe. (ECF No. 1 at ¶ 64-65). Yet, Roe reported Doe to both the police and to the University. (ECF No. 1 at ¶ 66-67).

On February 26, 2020, Doe appeared for his one and only interview with the investigative "Committee" - Deana Moylan ("Moylan"), Margaret McNeese ("McNeese"), Legal Officer Amy Dixon, and investigator Tiffany Obeng ("Obeng"). (ECF No. 1 at ¶ 70). The initial meeting was more akin to an interrogation in which Doe was questioned for more than two hours by all four administrators. (ECF No. 1 at ¶ 73). On March 9, 2020, McNeese sent Doe an email notifying him that he was interim suspended pending the outcome of the investigation and requesting that Doe sign a letter waiving his right to a hearing regarding the decision to impose an interim suspension. (ECF

---

[2] Plaintiff refers the Court to his Original Complaint (ECF No. 1) for a detailed recitation of the facts.

No. 1 at ¶ 76). On March 12, 2020, Doe emailed McNeese stating he would not sign the release, and requested a hearing on his interim suspension. (ECF No. 1 at ¶ 78). McNeese responded the following day saying a hearing would be arranged. However, no such hearing ever took place. (*Id.*)

On March 30, 2020, Doe reviewed the investigative summary over Zoom. (ECF No. 1 at ¶ 82). Doe submitted his response to the investigation summary on April 6, 2020, highlighting false and defamatory statements made by Roe. (ECF No. 1 at ¶ 83). On April 15, 2020, Doe received a Title IX determination letter from Moylan, stating that Doe was found responsible for violating HOOP Policy 59. As no hearing took place, Doe was never given the opportunity to cross-examine Roe, or any of the witnesses. (ECF No. 1 at ¶ 86). Doe also was not given the opportunity to appeal this decision, as HOOP 186 only provides an appeal for "the decision of the hearing officer."

On August 5, 2020, McNeese notified Doe by letter that he was permitted a "conditional return" beginning on August 10, 2020, so long as he complied with certain conditions. (ECF No. 1 at ¶ 110). The letter *did not* state that execution of the agreement would waive Doe's right to a hearing, and *did not* mention any disciplinary notation on his records or MSPE. Doe signed the agreement as he was eager to begin classes. (*Id.*) On August 14, 2020, McNeese and McDowelle informed Doe that they would impose a notation of the disciplinary finding on his MSPE (ECF No. 1 at ¶ 113), which would be released to medical institutions to which he seeks a residency match. Absent an expungement of his records and the MSPE disciplinary notation, Doe's lifetime of hard work towards his medical school education and future career prospects will be for naught. (ECF No. 1 at ¶ 178).

## III.   NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff commenced this action with the filing of his complaint on April 30, 2021. (ECF No. 1). Defendants filed their motions to dismiss Plaintiff's complaint on July 6, 2021. (ECF Nos. 19, 20). Plaintiff filed an Unopposed Motion for Extension of Time to respond to Defendants' motions to dismiss on July 9, 2021. (ECF No. 21). On July 12, 201, the Court granted Plaintiff's motion, extending

the deadline for his responses to Defendants' Motions to Dismiss until August 13, 2021. (ECF No.

23). Plaintiff hereby submits this response to Defendants Motion to Dismiss Plaintiff's Complaint.[3]

## IV.   STATEMENT OF THE ISSUES

1)   Plaintiff properly names the UT Health individual Defendants in their official and

individual capacities, in furtherance of his 42 U.S.C. § 1983 claims.

2)   Plaintiff's procedural due process claim brought pursuant to 42 U.S.C. § 1983 is not

barred by sovereign immunity.

3)   The *Ex parte Young* doctrine applies to Plaintiff's claims against the individual

Defendants in their official capacities for prospective injunctive relief.

4)   Plaintiff has standing to pursue his claims brought under 42 U.S.C. § 1983.

5)   Plaintiff's claims brought under 42 U.S.C. § 1983 and Title IX of the Education

Amendments of 1972 are ripe for adjudication.

6)   Plaintiff plausibly alleges a violation of Title IX under both the erroneous outcome

and selective enforcement theories.

7)   Plaintiff plausibly alleges claims for violations of his procedural due process rights

pursuant to 42 U.S.C. § 1983.

8)   The individually named Defendants are not entitled to qualified immunity.

## V.   ARGUMENT- Plaintiff's Complaint Establishes Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1)

### A.   *Standard of Review*

"In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of

fact which may be in dispute." *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir. 1981). "Ultimately,

---

[3] On August 6, 2021 Plaintiff filed a Joint Stipulation agreeing to dismiss Plaintiff's claims as against Defendant the University of Texas Board of Regents only. (ECF No. 26)

a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *citing to Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir.1998).

**B.      Arguments and Authorities**

**i.      UT Health Administrators are subject to suit under 42 U.S.C. §1983.**

This matter is properly brought against defendants McNeese, Moylan, Lahoti, and McDowelle in their official capacities, under the *Ex Parte Young* doctrine, as Plaintiff seeks prospective injunctive relief for an ongoing constitutional violation. The Fifth Circuit, in *Freedom From Religion Found. v. Abbott*, 955 F.3d 417, 424 (5th Cir. 2020), discussed the Supreme Court's recognition of three exceptions to Eleventh Amendment immunity. Namely, immunity may be abrogated by: (i) congressional abrogation; (ii) waiver; and (iii) prospective injunctive relief against state officials in their official capacities per *Ex Parte Young*, 209 U.S. 123 (1908). With respect to the third exception, the Court explained: "[u]nder *Ex parte Young*, a litigant may sue a state official in his official capacity as long as the lawsuit seeks prospective relief to redress an ongoing violation of federal law." The applicability of this exception has been "tailored to conform as precisely as possible to those specific situations in which it is 'necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to the supreme authority of the United States.' " *Freedom From Religion Found*, 955 F.3d at 424 (internal citations omitted).

**ii.      Ex Parte Young is applicable.**

As recognized by the Fifth Circuit, official-capacity suits against state officers for injunctive relief are permitted under § 1983 and are not barred by the Eleventh Amendment. *See Freedom From Religion Found., Inc. v. Mack*, 2021 WL 2887861, at *4 (5th Cir. July 9, 2021). Known as the *Ex parte Young* doctrine, this exception to Eleventh Amendment immunity permits prospective injunctive relief

5

claims against individuals in their official capacities for ongoing constitutional violations. *Ex parte Young* "ensures that state officials do not employ the Eleventh Amendment as a means of avoiding compliance with federal law." *Perez v. Texas A & M Univ. at Corpus Christi*, 2013 WL 6230353, at \*10 (S.D. Tex. Dec. 2, 2013), *aff'd*, 589 F. App'x 244 (5th Cir. 2014).

The basis for this exception is the recognition that "[w]hen a state official violates the Constitution or federal law, he acts outside the scope of his authority and is no longer entitled to the State's immunity from suit. *Young* thus creates a legal fiction—the state official who acts in violation of the federal Constitution is stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." *Ameritech Corp. v. McCann,* 297 F.3d 582, 586 (7th Cir. 2002) (internal citations and quotations omitted). Long after *Ex parte Young,* the Supreme Court in *Edelman v. Jordan* "reaffirmed the principle that state officers are not immune from prospective injunctive relief." *Hutto v. Finney*, 437 U.S. 678, 690 (1978); *Edelman v. Jordan,* 415 U.S. 651 (1974); *see Ex parte Young*, 209 U.S. 123 (1908). To fall within the *Ex parte Young* exception, a suit must: (1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation of federal, not state, law. *Freedom From Religion Found. v. Abbott*, 955 F.3d 417, 424 (5th Cir. 2020). As discussed below, Plaintiff's complaint meets these three elements.

### a.   Plaintiff's action is properly brought against state officers acting in their official capacities.

Plaintiff's Complaint names individual defendants for the effectuation of prospective injunctive relief under *Ex parte Young*. The Complaint, fairly read in Plaintiff's favor, alleges that McNeese and Moylan are responsible for oversight of UT Health's Title IX compliance. (ECF No. 1 at ¶ 155). In this role, McNeese serves as the Dean's designee for student conduct and discipline matters at the McGovern Medical School. (ECF No. 20-1 at ¶1). In addition, McNeese is responsible for oversight of the disciplinary process and for ensuring UT Health's compliance with any federal

court injunction related to ongoing due process violations, including the expungement of Doe's disciplinary record and notation on his MSPE. (ECF No. 1 at ¶ 234). Further, during the December 22, 2020 MSPE meeting, McDowelle informed Doe that McNeese would be the individual contacted by residency programs to inquire about his MSPE notation (ECF No. 1 at ¶ 148) suggesting that she is involved in the MSPE language. Accordingly, joinder of McNeese in her official capacity is necessary for purposes of implementing the prospective relief sought. (ECF No. 1 at ¶ 235). At minimum, Doe is entitled to discovery on this issue, to identify all personnel possessing the relevant authority.

### b.    Plaintiff seeks prospective relief for ongoing violations.

Second, the relief that Plaintiff seeks — reversal of the disciplinary outcome and sanctions, expungement of Plaintiff's disciplinary record, and removal of the disciplinary notation from his MSPE — unquestionably constitutes injunctive relief that is prospective in nature.[4] This is demonstrated by *Hudson v. Board of Regents of Texas Southern University*, in which three students sought an injunction ordering Defendants "to wipe clean [p]laintiffs' disciplinary record to the extent that it reflect[ed] violations relating to the acts underlying [p]laintiffs' claims under 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments." 2008 WL 2754622, at *6 (S.D. Tex. July 14, 2008). The court found "that this request constitute[d] a request for prospective injunctive relief and [was] not shielded by the Eleventh Amendment." *Id* (citing *Cox v. City of Dallas, Tex.,* 256 F.3d 281, 307-08 (5th Cir. 2001)). Similarly, in *Oliver v. University of Texas Southwestern Medical School*, the plaintiff commenced an action against UTSW and two of its employees, for their involvement in his wrongful expulsion. *Oliver v. University of Texas Southwestern Medical School*, 2019 WL 536376, at *3 (N.D. Tex. Feb. 11, 2019). Among other things, the plaintiff alleged "due process claims against all Defendants under 42 U.S.C.

---

[4] The Supreme Court has emphasized that "the difference between retroactive and prospective relief 'will not in many instances be that between day and night,'" and "[t]he line between retroactive and prospective relief cannot be so rigid that it defeats the effective enforcement of prospective relief." *Hutto*, 437 U.S. at 690 (quoting *Edelman*, 415 U.S. at 667).

§ 1983" and "gender discrimination in violation of Title IX against UTSW . . . ." *Id.* The plaintiff sought monetary damages and prospective injunctive relief, including an order clearing his transcript of all mention of charges against him. *Id.* The court held that "Oliver's Section 1983 claims [could] proceed against the two UTSW employees in their official capacities for prospective injunctive relief and in their individual capacities for damages." *Id.* at \*5. *See also Plummer v. Univ. of Houston*, 860 F.3d 767, 773 (5th Cir. 2017) ("[t]he sanctions imposed by the University could have a substantial lasting impact on [the students'] personal lives, educational and employment opportunities, and reputations in the community"); *Zollicoffer v. Livingston*, 169 F. Supp. 3d 687, 699 (S.D. Tex. 2016), *citing Elliott v. Hinds,* 786 F.2d 298, 302 (7th Cir.1986) ("[t]he injunctive relief requested here, reinstatement and expungement of personnel records, is clearly prospective in effect and thus falls outside the prohibitions of the Eleventh Amendment); *Doe v. Purdue Univ.*, 928 F.3d 652, 666 (7th Cir. 2019) ("John's marred record is a continuing harm for which he can seek redress"); *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) (pursuing expungement of university records "serve[s] the purpose of preventing present and future harm"); *Doe v. Cummins*, 662 F. App'x 437, 444 (6th Cir. 2016) (seeking to "remove the negative notation from appellants' disciplinary records" is "nothing more than prospective remedial action"); *Shepard v. Irving*, 77 F. App'x 615, 620 (4th Cir. 2003) (an "F" grade and a plagiarism conviction "constitute[d] a continuing injury to the plaintiff" and an action to remove them was "prospective in nature").

Furthermore, the failure to award Plaintiff the prospective relief he seeks in this action will result in ongoing violations of federal law. Defendants' cited cases are inapplicable. In *Wiley v. Texas State Univ.,* the plaintiff commenced his action *during* the investigation process due to alleged procedural errors. The Court granted his request for a temporary restraining order enjoining the due process hearing pending a hearing on the Plaintiff's motion for preliminary injunction. *Wiley v. Texas State Univ.*, 2019 WL 317247, at \*2 (W.D. Tex. Jan. 24, 2019). In contrast, in the instant matter,

Plaintiff's investigation and adjudication process was complete as of August 10, 2020 when he was permitted a conditional return to classes. (ECF No. 1 at ¶ 110-111). The University's offer of a hearing eight months later, in the midst of and arising out of settlement discussions does not alter the status of Doe's disciplinary case as having been previously completed. Here, Doe was entitled to a hearing before being sanctioned with a permanent disciplinary mark.

### iii.    Plaintiff has standing to pursue the relief requested.

Defendants ignore well established case law dictating that Doe has standing to pursue the relief sought in his Complaint as a result of the University's violations of his due process rights. The contention that the belated offer of a hearing will magically cure the University's procedural missteps and eradicate any potential harm to Doe is nonsensical. Significantly, the practical reason why due process matters is so that cases are not decided "on the basis of an erroneous or distorted conception of the law or the facts." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980). When violations of due process permeate a proceeding, the resultant finding is consequently invalid, and the appropriate remedy is a vacatur of the outcome. Conducting a hearing to adjudicate false allegations, based upon a faulty and gender-biased investigation, does not satisfy due process. Here, the appropriate remedy is an expungement of Doe's records. *See Doe v. Purdue Univ.,* 928 F.3d 652, 667 (7th Cir. 2019) ("having determined that John has pleaded a liberty interest, we instruct the court to address the issue of expungement on remand.")

Notably, while later claiming Doe will face no hardship if the Court withholds consideration of this matter, (ECF No. 20 at 19), Defendants do not dispute that Doe has alleged an "injury in fact" which is both "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical," nor do they dispute the existence of a "causal connection between the injury and the conduct complained of … " (*see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). There is no question that the harm Doe has alleged is imminent and concrete; absent an expungement of his

disciplinary records and clearing of the notation on his MSPE, he will be precluded from matching

with a competitive residency program of his choice. *See* Declaration of Suzanne M. Miller ("Miller

Decl.") ¶¶ 6-7, 25-31. Defendants' argument instead focuses on the "redressability" element, namely,

whether it is "likely … that the injury will be redressed by a favorable decision." *Deutsch v. Annis*

*Enterprises, Inc.*, 882 F.3d 169, 173 (5th Cir. 2018) (quoting *Lujan*, 504 U.S. at 560–61). Importantly,

"[a] question of standing raises the issue of whether the plaintiff is entitled to have the court decide

the merits of the dispute or of particular issues." As such, the focus is "not on the issues [the party]

wishes to have adjudicated." *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 869 (5th Cir. 2000) (internal

citations omitted). Doe's Complaint satisfies the redressability requirement as the relief requested

(expungement of the records and MSPE notation) would rectify the precise harms caused by the

Defendants' procedural due process violations.

Defendants contend that Doe's requested remedies are unavailable for a procedural due

process claim, but none of the cases they cite in support of this proposition involve a student

disciplinary proceeding. Even if this Court were to conclude that Doe's procedural due process claim

cannot be redressed by a favorable decision, he is nonetheless entitled to pursue the injunctive relief

requested pursuant to his Title IX claim. The Supreme Court has confirmed that both injunctive relief

and damages are available in a suit alleging violations of Title IX. *See Fitzgerald v. Barnstable Sch. Comm.*,

555 U.S. 246 (2009) ("[i]n a suit brought pursuant to Title IX, both injunctive relief and damages are

available"); Education Amendments of 1972, § 901(a), 20 U.S.C.A. § 1681(a). As part of his Title IX

claim, Doe seeks "injunctive relief directing UT Health to: (i) reverse the outcome, findings, and

sanction regarding the complaint; (ii) expunge Plaintiff's disciplinary record with respect to the Roe

complaint; (iii) remove any record of the finding or Plaintiff's suspension from his educational

file/disciplinary records/transcript; (iv) remove the professionalism notation on Plaintiff's MSPE

regarding the Roe complaint; and (v) any and all further actions required to return Plaintiff to the

status quo ante." (ECF No. 1 at ¶ 199, 215). Such relief is expressly permitted in a suit brought pursuant to Title IX. Plaintiff therefore satisfies the redressability component of a standing analysis.

### iv.    Plaintiff's claims are ripe for adjudication.

Defendants erroneously submit that Doe's claims are not ripe for adjudication because he allegedly refused to accept the University's offer to participate in a conduct hearing in April of 2021. Putting aside the mischaracterization of the context leading to such "offer", the grounds for Defendants' contention that Doe's claims are not ripe have been directly refuted by the case law that Defendants cite in their brief. As stated by the Fifth Circuit in *Fontenot v. McCraw*, "[i]t is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.' " 777 F.3d 741, 747 (5th Cir. 2015) (internal citations omitted). In fact, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.*

Just as the Fifth Circuit observed in *Fontenot*, this Court should view Defendants' actions in inducing the purported mootness of Plaintiff's claims "with caution because 'there exists some cognizable danger of recurrent violation' where 'a defendant [ ] follows one adjudicated violation with others.' " *Id.* (quoting to *United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 634 (1953)). As such, "allegations by a defendant that its voluntary conduct has mooted the plaintiff's case require closer examination than allegations that 'happenstance' or official acts of third parties have mooted the case. The overarching goal is to determine whether the defendant's actions are mere 'litigation posturing' or whether the controversy is extinguished." *Fontenot*, 777 F.3d at 747–48 (internal citations omitted). There is no question that the University's belated offer of a hearing, in the midst of settlement negotiations amongst counsel, and in anticipation of the commencement of this action, does not

11

remove the case from this Court's jurisdiction. [5]

Moreover, the concerns at issue in this matter are neither abstract nor hypothetical; the hardship to Doe should the Court withhold its consideration is very real. Doe's chances of obtaining a residency position in a program of his choice will be severely diminished due to the disciplinary finding. (Miller Decl., ¶¶ 6-7, 25-31). Contrary to Defendants' argument, the Parties' dispute concerning the language included in Doe's MSPE letter is far from an "abstract disagreement." There is no question that, even if Doe had accepted the April 2021 offer of a hearing, and even if he were found not responsible, UT would still disclose the underlying allegations in Doe's MSPE letter. (ECF No. 20-4). By the University's own account, a further hearing would not remedy its procedural violations and the resultant harm to Doe. Rather, the only way to rectify the harm resulting from Defendants' violations is to clear Doe's records of the erroneous findings.

## VI.   ARGUMENT- Plaintiff States Claims Upon Which Relief May be Granted Pursuant to Fed. R. Civ. P. 12(b)(6)

### A.   Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim demonstrates facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Oliver*, 2019 WL 536376, at *6 (internal citations omitted). In assessing a motion to

---

[5] Plaintiff will not tread on the settlement discussions engaged in between counsel prior to the commencement of this action, which are indisputably covered by FRE 408. However, as Defendants have introduced this argument and in doing so, mislead the Court on the procedural history of this matter, Plaintiff intends to make clear that the belated offer of a hearing, approximately one year after the investigation concluded (ECF No. 20-7) was proffered in the midst of settlement negotiations. Such acts cannot be utilized to extinguish Plaintiff's claims and damages, nor deemed sufficient to rectify past misconduct.

dismiss, "the plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Securities Inc.,* 94 F.3d 189, 194 (5th Cir.1996). Finally, "when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court must examine the complaint to determine whether the allegations provide relief on any possible theory. . . ." *Ramming v. United States,* 281 F.3d 158, 161–62 (5th Cir. 2001) (internal citations omitted).

  **B.**  **Arguments and Authorities**

    **i.**  <u>**Plaintiff Plausibly Alleges Violations of Title IX Against UT Health**</u>

      **a.**  **Plaintiff adequately pleads an erroneous decision was motivated by gender bias.**

  The Fifth Circuit utilizes the analytical framework provided in *Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir. 1994), to determine whether a complaint adequately pleads a violation of Title IX. *See Klocke v. Univ. of Texas at Arlington*, 938 F.3d 204, 210 (5th Cir. 2019), *cert. denied,* 140 S. Ct. 1268, 206 L. Ed. 2d 256 (2020). *Yusuf* classifies challenges to university disciplinary proceedings for sex discrimination in two categories: (1) "erroneous outcome" cases, in which "the claim is that plaintiff was innocent and wrongly found to have committed an offense"; and (2) "selective enforcement" cases, in which "the claim asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or decision to initiate the proceeding was affected by the student's gender." 35 F.3d at 715. Plaintiff pleads both as part of his Title IX case. (ECF No. 1 at ¶ 185-215).

    **1.)**  *Facts casting doubt on the accuracy of the outcome.*

  According to *Yusuf*, for an "erroneous outcome" case, the plaintiff must establish: (i) "particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding" and (ii) "particular circumstances suggesting gender bias was a motivating factor behind the erroneous findings." 35 F.3d at 715. With respect to the first prong, the Court in

*Yusuf* explained: "the pleading burden in this regard is not heavy. For example, a complaint may allege particular evidentiary weaknesses behind the finding of an offense such as a motive to lie on the part of a complainant or witnesses, particularized strengths of the defense, or other reason to doubt the veracity of the charge. A complaint may also allege particular procedural flaws affecting the proof." *Id.* Defendants dispute that Plaintiff has made plausible allegations of an erroneous outcome. (ECF No. 20 at 20). However, Defendants' argument is based upon a misstatement and misrepresentation of the facts underlying the conduct proceeding.

First, Doe maintained at all times that he never intended to harm either himself or Roe, and that he never threatened to harm Roe, removing the alleged interactions from the scope of a "dating violence" charge per the University's Policy. The interaction leading to the complaint against Doe arose when Roe entered Doe's apartment, unannounced, uninvited, and with a key he had previously requested that she return. (ECF No. 1 at ¶ 63-64). Doe was shocked when Roe entered and indicated he wanted her to leave, as he did not want Roe to see him in his highly emotional state. (ECF No. 1 at ¶ 64). When she refused to do so, Doe picked up the unloaded pistol that was beside him and pointed it to the door while telling Roe to leave. (ECF No. 1 at ¶ 62-64). He did *not* intend to harm Roe and did *not* "produce" a gun after an argument, as no argument occurred at that time. (ECF No. 1 at ¶ 64-65). In fact, on April 29, 2020, the Grand Jury found there was no probable cause to indict Plaintiff and no bill of prosecution was issued. (ECF No. 1 at ¶ 89).

Second, Roe's actions after the alleged incident contradicted any contention of having felt "threatened" by Doe. Specifically, despite claiming to be fearful of Doe and requesting a no-contact order, on February 20, 2020, Roe showed up at Doe's family's home in the middle of the night, called multiple family members of Doe, left two voice messages on Doe's mother's phone, and sat outside of Doe's home for over 45 minutes. (ECF No. 1 at ¶ 69). On June 10, 2020, Roe texted Doe to coordinate a location to meet up and exchange belongings. (ECF No. 1 at ¶ 99). On October 23, 2020,

Roe opted to take a voluntary orthopedic trauma call while Doe was performing his required fourth year rotation on that service, and Roe attempted to talk to Doe. (ECF No. 1 at ¶ 138). On October 24, 2020, Roe again attempted to provoke Doe into violating the no-contact order when she tried to engage in conversation with Doe during his morning checkout. (ECF No. 1 at ¶ 140). Doe notified the University of Roe's prohibited conduct on October 23 and October 25, 2020. (ECF No. 1 at ¶ 141). Tellingly, the University took no action against Roe. (*Id.*)

Third, Defendants ignored evidence presented by Doe which directly refuted Roe's claims, and instead improperly deemed her to be credible. By way of example: (i) Roe claimed that Doe was a cocaine user, which was directly refuted by a drug test; (ii) Roe stated she and Doe broke up two to three weeks prior to February 14, but text messages show they had reconciled; and (iii) Roe alleged that Doe told her he wanted to ruin her performance on the Step 1 exam, which was factually disproven by text messages in which Doe guided her through the preparation process and Roe commented she "had a great coach." (ECF No. 1 at ¶ 83). Despite the foregoing, Defendants chose to overlook multiple inconsistencies when finding Doe responsible.

Additionally, the denials of due process discussed below (*see* pp. 18-23) further cast doubt on the accuracy of UT's findings. The foregoing sufficiently alleges an erroneous outcome was reached.

### 2.) *Gender bias was a motivating factor.*

Under the second prong of the erroneous outcome test, the "circumstances suggesting gender bias was a motivating factor behind the erroneous findings . . . might include, *inter alia,* statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Yusuf*, 35 F.3d at 715. The element of "gender bias was a motivating factor behind the erroneous findings" is reflected in how the university's process is structured and how decisions are made. Title IX is a non-discrimination statute that requires equitable treatment for women and men. Neither the text nor the legislative history of

Title IX justifies procedurally inadequate and biased tribunals staffed by individuals who treat females as victims presumptively telling the truth, and males as rapists engaged in victim blaming and likely distorting the truth. R.L. Shibley, *Twisting Title IX* (2016); A. Scalia, *Reading Law: The Interpretation of Legal Texts* (West Pub. 2012); R. Katzman, *Judging Statutes* (Oxford Univ. Press 2014).

Here, a number of facts support a finding of gender bias. First, throughout the disciplinary proceeding, the UT administrators involved in Doe's case made explicit statements demonstrating a clear bias against Doe as the male accused. At his August 14, 2020 meeting with McNeese and McDowelle, McNeese stated that Doe should reach out to the chairman of the orthopedics department at UT Health because he would empathize with Doe since they "both have problems with women." (ECF No. 1 at ¶ 113-114). McNeese and McDowelle then proceeded to discuss men that might "understand [Doe's] dilemma" with women. (ECF No. 1 at ¶ 114). During this same meeting, McNeese mocked Doe by asking him how the food in jail was and questioned him on details regarding his experience there. (ECF No. 1 at ¶ 115). At an October 9, 2020 meeting, Lahoti made inappropriate comments regarding Doe's appearance and beard. (ECF No. 1 at ¶ 128-129).

Second, in investigating the charges against Doe, the University overlooked evidence presented by Doe tending to dispute Roe's credibility (*see* p. 15) and misconstrued the context of the interaction at issue. The University mischaracterized the encounter as an act of dating violence and punished Doe aggressively for it, notwithstanding the recognition by McNeese's August 5, 2020 letter that this was in fact a mental health event, which should have been met with support from the University rather than discipline. (ECF No. 1 at ¶ 85, 110).

Third, the University required Doe to undergo a psychological assessment in order to continue with his medical education. In contrast, though Dr. Glass recommended that UT Health conduct a thorough forensic psychiatric assessment and substance abuse screening of Roe as well, the University declined to do so. (ECF No. 1 at ¶ 81).

Fourth, while requiring Plaintiff to maintain confidentiality and abide by the no-contact order, the University failed to take any action against Roe for her repeated violations, despite being notified by Doe of Roe's inappropriate conduct. (ECF No. 1 at ¶ 69, 99, 138, 140, 141).

Finally, in depriving Doe of the hearing to which he was entitled, and by permitting McNeese to unilaterally impose a disciplinary sanction that was not subject to any form of review, Defendants carried out their gender-biased presumption that Doe was guilty of misconduct, and aggressively punished him for it.

### b. Plaintiff adequately alleges that UT Health engaged in selective enforcement.

Plaintiff also pleads a violation of Title IX under the selective enforcement theory. To succeed on this claim, a plaintiff must demonstrate that gender was a motivating factor in the decision to initiate a disciplinary action and/or the severity of the punishment. *Lozano v. Baylor Univ.,* 408 F.Supp.3d 861, 882 (W.D. Tex. 2019). Selective enforcement is adequately pled in the instant matter, where UT's decision to continue its investigation of Plaintiff, despite the lack of corroborating evidence and the expunction of the criminal matter, was motivated by gender. UT selectively enforced its policies as between Doe and Roe, when it aggressively pursued the allegations against Doe, ultimately leading to a disciplinary sanction that will impact the remainder of his medical career, while failing to take any action against Roe despite the University's knowledge of her repeated violations of the no-contact order. In this situation, Doe and Roe were similarly situated individuals in that they each faced allegations of violating the University's policies. Yet UT ignored Doe's reports about Roe's misconduct and took no action against her. (ECF No. 1 at ¶ 69, 99, 138, 140, 141).

### ii. Plaintiff Plausibly Alleges a Fourteenth Amendment Procedural Due Process Claim Pursuant to 42 U.S.C. § 1983.

Courts have consistently recognized the fundamental requirements of due process as "the opportunity to be heard at a meaningful time and in a meaningful manner." *See Mathews v. Eldridge*, 424

U.S. 319, 333 (1976); *Goss v. Lopez*, 419 U.S. 565, 581 (1975). But due process, "unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances; instead, it is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 333; *Board of Curators of University of Missouri v. Horowitz*, 435 U.S. 78, 98 (1978); *Goss,* 419 U.S. at 581; *see Shaboon v. Duncan*, 252 F.3d 722, 730–31 (5th Cir. 2001). Generally, the amount of process due in university disciplinary proceedings is based on a sliding scale that considers three factors: (a) the student's interests that will be affected; (b) the risk of an erroneous deprivation of such interests through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (c) the university's interests, including the burden that additional procedures would entail. *Plummer*, 860 F.3d at 773*, as revised* (June 26, 2017). The Fifth Circuit in *Murray v. W. Baton Rouge Par. Sch. Bd.*, (472 F.2d 438, 443 (5th Cir. 1973)), made "clear that a suspension for forty days or more without provision for a prior hearing presents serious due process problems." Moreover, the Fifth Circuit concluded that the district court erred in determining that "the absence or deficiency of an initial hearing may be cured by a valid subsequent hearing" noting that "[p]rocedural due process must, on the facts present in this case, be given prior to imposition of serious suspensions." *Id.*

Defendants concede that Doe has a liberty interest in his higher education. (ECF No. 20 at 24); *see Plummer*, 860 F.3d at 773; *Oliver*, 2019 WL 536376, at *8 (recognizing that medical student had liberty interest in his higher education and potential harm to his reputation and inability to pursue career as a physician entitled him to procedural due process protections). Thus, the critical issue is whether, in suspending Doe for a period of six months and permanently tarnishing his transcript and MSPE, Defendants deprived him of his protected interests without the requisite level of due process.

### a.    UT Health deprived Plaintiff of his due process rights.

The University deprived Plaintiff of his due process rights when it: (i) imposed an interim

suspension without a hearing; (ii) deprived Doe of a hearing process; (iii) did not afford Doe an opportunity to cross-examine his accuser; (iv) failed to employ an impartial decision-maker; and (v) denied him any opportunity to appeal.

### 1.)   *Imposition of interim suspension without a hearing.*

Defendants violated Plaintiff's due process rights when they imposed an interim suspension without a hearing. On March 9, 2020, McNeese notified Plaintiff that he was interim suspended pending the outcome of the investigation. (ECF No. 1 at ¶ 76). She requested that Plaintiff sign a letter waiving his right to a hearing regarding the interim suspension, in violation of his procedural rights. (*Id.*) On March 12, 2020 Doe emailed McNeese stating he would not sign the release, and requested a hearing on his interim suspension. (ECF No. 1 at ¶ 78). McNeese responded the following day saying a hearing would be arranged as soon as possible given the developments of the Covid-19 pandemic. However, no such hearing ever took place. (*Id.*) This decision was particularly egregious given the fact that four days after Plaintiff was suspended, UT switched to fully virtual instruction. Thus, Plaintiff posed absolutely no danger to persons or property, nor any threat of disrupting the remote academic environment. UT had no justifiable reason to prevent Plaintiff from attending classes remotely, yet he was never given the opportunity to make his case on this point, as a hearing was never held. *See Haidak v. Univ. of Massachusetts-Amherst,* 933 F.3d 56 (1st Cir. 2019) ("When a state university faces no real exigency and certainly when it seeks to continue a suspension for a lengthy period, due process requires something more than an informal interview with an administrative authority of the college.") The implementation of this suspension, without an opportunity to be heard constituted a violation of Doe's right to due process. *See JOHN DOE, Plaintiff, v. COLUMBIA UNIVERSITY, Defendant*, 2021 WL 3292591, at *25 (S.D.N.Y. Aug. 1, 2021) (recognizing that an interim suspension "more or less deprives a student of all the benefits of being enrolled at a university…in this context, under the Due Process clause, the opportunity to be heard requires 'some kind of hearing").

### 2.)   *Failure to provide a hearing on the charges against Doe.*

Doe never waived his right to a hearing on the charges against him, contrary to what Defendants would have this Court believe. This argument is merely a red herring, intended to direct the Court away from Defendants' misconduct in depriving Doe of the process to which he was indisputably entitled. The August 5, 2020, letter from McNeese did not state that execution by Doe would waive his right to a hearing, nor was he ever instructed that signing the conditional return would result in a waiver. Moreover, the University's own policies provide that in order for a waiver of hearing to be effective, "both the complainant witness/complainant and the accused student **must agree to the terms of the … waiver of the hearing procedures**; otherwise, the hearing and appeals will proceed in accordance with this policy." (ECF No. 1 at ¶ 162) (emphasis added). As no such agreement occurred, Doe was denied his fundamental right to a hearing based upon a groundless and self-serving belief by McNeese that Doe simply "did not want one." (McNeese Decl., ECF No. 20-1 at ¶ 5).

Consequently, Defendants deprived Doe of the requisite due process when McNeese imposed disciplinary sanctions against him without affording Plaintiff an opportunity to appear for a hearing before a panel of neutral decision-makers. After Plaintiff had already been suspended for six months, McNeese unilaterally determined "the appropriate discipline" for Plaintiff's alleged violation of the Sexual Misconduct Policy. (McNeese Decl., ECF No. 20-1 at ¶ 2-3). McNeese concluded "that Plaintiff could continue in his academic program, subject to certain conditions" (*Id.* at ¶ 4), thus inflicting further damage and delay on Doe's medical education. Despite the lack of any waiver from Doe of his right to a hearing, it was not until eight months later, only after being contacted by Doe's attorneys, that McNeese finally "sent a letter to Plaintiff offering him a hearing" to challenge the disciplinary finding. (*Id.* at ¶ 6). Accordingly, Doe was subjected to grievous damage to his medical education and career prospects, while being wholly deprived of "the opportunity to be heard at a meaningful time and in a meaningful manner." *See Mathews*, 424 U.S. at 333; *Shah v. Univ. of Texas Sw.*

*Med. Sch.,* 54 F. Supp. 3d 681, 691 (N.D. Tex. 2014).

### 3.)   *Denial of cross-examination.*

Defendants' failure to provide Doe with a hearing also deprived him of the right to cross-examine his accuser. The Supreme Court has held that "in almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970). This is so because "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). Thus, in cases with significant factual disputes, such as where the "choice [is] between believing an accuser and an accused, . . . cross-examination is not only beneficial, but essential to due process." *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 641 (6th Cir. 2005); *Oliver*, 2019 WL 536376, at *12 ("where there are significant factual disputes over whether the alleged misconduct occurred, additional procedural safeguards may be required such as . . . .cross-examination of those witnesses"); *Winnick v. Manning*, 460 F.2d 545, 550 (2d Cir. 1972). *See also Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018) ("Due process requires cross-examination in circumstances like these because it is 'the greatest legal engine ever invented' for uncovering the truth…Not only does cross-examination allow the accused to identify inconsistencies in the other side's story, but it also gives the fact-finder an opportunity to assess a witness's demeanor and determine who can be trusted. . . . So if a university is faced with competing narratives about potential misconduct, the administration must facilitate some form of cross-examination in order to satisfy due process.") (internal citations omitted); *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 403 (6th Cir. 2017).[6] As Doe was not afforded a hearing, he also did not have an opportunity to cross-examine Roe.

---

[6] On May 6, 2020, the Department of Education released its final regulations on Title IX, which took effect on August 14, 2020.[6] *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 85 Fed. Reg. 30,026 (May 19, 2020) (codified at 34 C.F.R. pt. 106). The regulations make clear, *inter alia*, that schools are now required to afford parties a live hearing with cross-examination, to ensure compliance with the statute.

**4.)**    *Denial of impartial decision-maker.*

A further requirement of due process is an impartial decision-maker. *Marshall v. Jerrico, Inc.*, 446

U.S. 238, 242 (1980) (lack of impartiality may result in an "erroneous outcome"). As described by the

Supreme Court:

> The neutrality requirement helps to guarantee that life, liberty, or property will
> not be taken on the basis of an erroneous or distorted conception of the facts
> or the law. At the same time, it preserves both the appearance and reality of
> fairness, generating the feeling, so important to a popular government, that
> justice has been done, by ensuring that no person will be deprived of his
> interests in the absence of a proceeding in which he may present his case with
> assurance that the arbiter is not predisposed to find against him.

*Marshall*, 446 U.S. at 242 (internal citations and quotations omitted). Doe was not afforded a neutral

decision-maker when McNeese unilaterally determined the sanction to impose on him. (McNeese

Decl., ECF No. 20-1 at ¶ 2-3). It was evident that McNeese was predisposed against Doe from the

outset when she (i) participated in interrogating Doe for over two hours about Roe's allegations during

his one and only interview (ECF No. 1 at ¶ 70, 72-73); (ii) interim suspended Doe without a hearing,

in disregard of his explicit request for one (ECF No. 1 at ¶ 76); (iii) overlooked Roe's abusive behavior

toward Doe (ECF No. 1 at ¶ 85); (iv) required Doe to undergo a psychological evaluation, to determine

what disciplinary sanction to impose while ignoring the recommendation of a reputable psychiatrist

to also evaluate Roe (ECF No. 1 at ¶ 92); and (v) withheld from Doe the psychological assessments.

(ECF No. 1 at ¶ 104, 106, 109). UT's failure to employ a neutral and impartial adjudicator further

deprived Doe of his procedural rights to a fair process.

**5.)**    *Denial of opportunity to appeal.*

Defendants further violated Doe's due process rights when they did not afford him an

opportunity to appeal the decision and sanction. UT's policy HOOP 186 provides an accused student

the opportunity to appeal the decision of a hearing officer. However, as Doe was never afforded a

hearing of the charges against him, and McNeese inexplicably "believed that Plaintiff did not want a

hearing," (McNeese Decl., ECF No. 20-1 at ¶ 5), he was never afforded the right to appeal the decision. (ECF No. 1 at ¶ 87, 175-176). Instead, Doe received a Title IX determination letter from Moylan in which he was found responsible for violating HOOP Policy 59, and McNeese unilaterally issued a disciplinary sanction, both of which were insulated from any type of review or challenge. (ECF No. 1 at ¶ 86-87; McNeese Decl., ECF No. 20-1 at ¶ 2-3).

### iii.   The Administrators are not entitled to qualified immunity.

Finally, the individual Defendants are not entitled to a defense of qualified immunity. Qualified immunity "shields government officials only from money damages in their individual capacities, not suits for injunctive relief in their official capacities." *Oliver,* 2019 WL 536376, at *7. A government official is stripped of a qualified immunity defense when a plaintiff pleads facts demonstrating "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* As discussed above (*see* pp. 19-20) Defendants violated Doe's clearly established constitutional right to a hearing before a neutral decision-maker, both prior to being interim suspended, and prior to being disciplined in relation to a finding of responsibility.

McNeese does not escape liability due to her status as a supervisor in the University's Title IX office. To be liable in one's official capacity, a supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). As described in the Complaint, while purporting to recuse herself from Doe's case, McNeese continued to be involved for the duration of the proceeding up until the MSPE meeting on December 22, 2020. Specifically: (i) on March 9, 2020, McNeese notified Doe that he was interim suspended pending the outcome of the investigation, and requested that Doe sign a letter waiving his right to a hearing regarding the interim suspension decision (ECF No. 1 at ¶ 76); (ii) when Doe requested a hearing on the interim suspension, McNeese failed to schedule one (ECF No. 1 at ¶ 78); (iii) on May 11, 2020, McNeese ordered Doe to undergo a psychological evaluation to determine what disciplinary

sanction to impose against him (ECF No. 1 at 92); (iv) McNeese received the report prepared in the course of the mandated psychological evaluation of Doe on June 28, 2020 (ECF No. 1 at ¶ 103); (v) McNeese refused to provide Doe with a copy of such report on three separate occasions, until she was able to "get clarification on a few questions" (ECF No. 1 at ¶ 104, 106, 109); (vi) Doe attended a meeting with McNeese and McDowelle on August 14, 2020 to discuss his return to UT and the notation of a disciplinary finding on his MSPE (ECF No. 1 at ¶ 113); and (vii) Doe met with McNeese and McDowelle regarding his MSPE on December 22, 2020 (ECF No. 1 at ¶ 148). Based on the foregoing, the Complaint demonstrates that McNeese not only knew about the conduct at issue but also facilitated, approved, and condoned the deprivations of Doe's rights. *See Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011) (stating that under Section 1983, a government official may be held liable solely for his own conduct); *Jones v. Lowndes County, Mississippi*, 678 F.3d 344, 349 (5th Cir. 2012) ("A Section 1983 claimant must 'establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.' ").

Moylan, Lahoti, and McDowelle are likewise not entitled to a qualified immunity defense, due to their involvement in the disciplinary decision and sanction issued against Doe. Moylan, responsible for oversight and Title IX compliance, participated in the sole investigation interview with Doe and asked him inappropriate questions, demonstrating a lack of neutrality. (ECF No. 1 at ¶ 23, 71, 155). Moylan also prepared the investigation summary, (ECF No. 1 at ¶ 85), and issued the decision letter finding Doe responsible for a policy violation, (ECF No. 1 at ¶ 86), which Doe was not able to challenge. (ECF No. 1 at ¶ 87). McDowelle participated in the August 14, 2020 meeting along with McNeese, during which they advised Doe that they would impose a notation of the responsibility finding on his MSPE. (ECF No. 1 at ¶ 113). McDowelle notified Doe during the December 22, 2020 meeting that McNeese would be contacted by residency programs to inquire about his MSPE, thus upholding the improper notation. (ECF No. 1 at ¶ 148). Additionally, McDowelle confirmed receipt

of Doe's email regarding Roe's violations of the no-contact order but failed to take any action in response. (ECF No. 1 at ¶ 141). Lahoti, during the October 9, 2020 meeting with Doe inappropriately commented on Doe's beard and appearance, demeaned his academic performance, and deprived him of his educational opportunities by prohibiting him from taking one year off and excluding him from the Alpha Omega Alpha Honors Society. (ECF No. 1 at ¶ 128-133). Each of the foregoing actions facilitated and contributed to the deprivations of Doe's procedural rights.

In addition, UT's stated defense of qualified immunity is premature. Although a court should decide the issue of qualified immunity as early as possible, "it would be a miscarriage of justice for this Court to rule on this issue without all of the relevant facts." *Oliver,* 2019 WL 536376, at *14. That is why the Fifth Circuit "has established a careful procedure under which a district court may defer its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense." *Id.* Thus, the defense of qualified immunity is "generally addressed at summary judgment rather than on the pleadings." *Doe v. Purdue Univ.,* 928 F.3d 652, 665 (7th Cir. 2019); *see also Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) ("[A] complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds."). Based on the foregoing, the individual Defendants are not entitled to dismissal on grounds of qualified immunity at this stage of the proceedings.

## VII.   <u>CONCLUSION</u>

For the reasons stated above, Defendants' Motion to Dismiss Plaintiff's Complaint should be denied in its entirety, and the Court should order such other relief as deemed just and proper. In the event Defendants' Motion is granted in whole or in part, Plaintiff alternatively requests leave to amend his Complaint, pursuant to Federal Rule of Civil Procedure 15(a)(2).

Dated: August 13, 2021

Respectfully submitted,

/s/ *Andrew T. Miltenberg*

Andrew T. Miltenberg, Esq. *(pro hac vice)*
Tara J. Davis, Esq. *(pro hac vice)*
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
tdavis@nmllplaw.com

Walter Lynch, Esq.
*State Bar No. 24046330*
*Federal ID No. 965265*
Amir Halevy, Esq.
*State Bar No. 24065356*
*Federal ID No. 1259956*
JORDAN, LYNCH & CANCIENNE PLLC
1980 Post Oak Blvd, Suite 2300
Houston, Texas 77056
(713) 955-4021 (direct line)
(713) 955-9644 (facsimile)
wlynch@jlcfirm.com
ahalevy@jlcfirm.com

COUNSEL FOR PLAINTIFF