IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOHN DOE,<br>　*Plaintiff,*<br><br>v.<br><br>UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT HOUSTON, UNIVERSITY OF TEXAS BOARD OF REGENTS, MARGARET MCNEESE, in her individual and official capacity, DEANA MOYLAN, in her individual and official capacity, SHEELA LAHOTI, in her individual and official capacity, and DANA MCDOWELLE, in her individual and official capacity,<br>　*Defendants.* | Civil Action No. 4:21-cv-01439 |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE GRAY H. MILLER:

Defendants The University of Texas Health Science Center at Houston (UTHealth), Margaret McNeese, M.D., Deana Moylan, Sheela Lahoti, M.D., and Dana McDowelle, M.D., in both their individual and official capacities (the Administrators), submit this Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss Plaintiff's Original Complaint (ECF 27—the Response), pray the Court dismiss this suit in its entirety, and respectfully show the Court as follows:

### I. INTRODUCTION

With his Response, Doe has made one thing abundantly clear: he does not want a hearing to clear his name. He wants this Court to simply make UTHealth's investigative findings disappear as if he never waved a gun at his ex-girlfriend and got arrested. Nothing in the Response disputes that Doe was arrested for aggravated domestic assault after the incident involving Roe or that he admitted in his written statement as well as in his interview in front of McNeese, Moylan, and his lawyer, to waving the gun in Roe's direction during the altercation. There is no dispute that Doe violated UTHealth's

sexual misconduct policy. Instead, Doe wants to have the Court to insert itself to prevent the disclosure of this event and the aftermath to future institutions. There is no basis in law for this remedy.

Even if Doe's due process rights were violated, which Defendants do not concede, the remedy is to provide the process Doe was allegedly denied. *Wiley v. Tex. State Univ.*, No. 1:18-cv-930-RP, 2019 WL 317247, at *3 (W.D. Tex. Jan. 24, 2019) ("the remedy for a procedural due process claim is more process"). If Doe refuses the process UTHealth is offering him, he confirms that he is waiving his right to a hearing and has no grounds to argue that UTHealth got it wrong. Doe's complaints regarding the denial of an opportunity to cross-examine witnesses, and other alleged procedural infirmities, ECF 27 at 21, are equally disingenuous considering he now has these opportunities under the current Title IX regulations. ECF 20.4. His claims are undoubtedly unripe, and he otherwise fails to state a claim for which relief may be granted. The Court should grant Defendants' Motion to Dismiss Plaintiff's Original Complaint.

## II. ARGUMENT

### A. The only relief to which Doe could be entitled is more process.

Defendants have already offered Doe the relief to which he would be entitled for any alleged due process violation. Because Doe does not seek the vindication this avenue would provide if he were correct, he essentially concedes that his claim of "erroneous outcome" has no merit. Yet he maintains that the Court should overturn all of UTHealth's findings without the need for a hearing. These circumstances do not demonstrate an ongoing violation of federal law; rather, they demonstrate that Doe is seeking a remedy to which he is not entitled. *See, e.g.*, *Clarke v. Univ. of N. Tex.*, 993 F.2d 1544, 1993 WL 185814, at *3 (5th Cir. 1993) ("[Clarke] confuses right with remedy. His *right* was to obtain notice and 'some kind of hearing' in connection with the charges made against him. Procedural due process rights do not guarantee a particular outcome to a disciplinary proceeding but only assure

that it is fairly conducted."); *Wiley*, 2019 WL 317247, at *3. Doe is not entitled to a guaranteed outcome without a hearing. His claims should be dismissed because they do not fall within the ambit of *Ex parte Young*. He has already been offered the only remedy to which he would be entitled—hence there is no ongoing violation of federal law to enjoin. *See O'Donnell v. Harris County*, 892 F.3d 147, 163 (5th Cir. 2018); *Clarke*, 1993 WL 185814, at *3. Doe wants to skip an available process and then argue that he did not get the process to which he was entitled—litigation posturing the Fifth Circuit has refused to entertain on numerous occasions. *Cf. Myrick v. City of Dallas*, 810 F.2d 1382, 1388 (5th Cir. 1987); *Galloway v. Louisiana.*, 817 F.2d 1154, 1158 (5th Cir. 1987).

Doe's citation to *Hudson* is unavailing—prospective relief was only properly asserted in that case because, from the University's perspective, the disciplinary hearing had already concluded. *See Hudson v. Bd. of Regents of Tex. S. Univ.*, No. 4:05-CV-03297, 2008 WL 2754622, at *6 (S.D. Tex. July 14, 2008). The Court in *Hudson* ultimately denied plaintiffs' request for prospective injunctive relief because it found that the University had not violated any due process principles. *Id.* at ** 6 n.5, 10 ("The Court notes, however, that the request for injunctive relief only survives summary judgment to the extent that the underlying claims survive summary judgment. Put another way, Plaintiffs may not request injunctions that relate to unmeritorious federal law claims."). *Oliver* is similarly off point. The plaintiff in *Oliver* actually pursued a hearing as to the allegations against him and he was permanently expelled, unlike Doe, who was allowed to graduate and was readmitted after his suspension. *See Oliver v. Univ. of Tex. Sw. Med. Sch.*, No. 3:18-CV-1549-B, 2019 WL 536376, at *9 (N.D. Tex. Feb. 11, 2019). *Doe v. Perdue University* is likewise distinguishable—in that case, the hearing panel admitted to not reading the investigation report or getting a statement from the complainant, circumstances that are not alleged here. 928 F.3d 652, 657–58 (7th Cir. 2019).

Doe's choice to reenter UTHealth, submit to the conditions of his return by getting psychiatric treatment, refrain from contact with Doe, and not pursue a hearing at the time of his readmission

represented the bargain reached between him and the Medical School. ECF 1 ¶¶ 8, 22, 110, 113. Doe was well aware of the relevant UTHealth policies, as he attested to in his return-to-school agreement, and could not have had any reasonable expectation that a hearing would take place after his reinstatement. Offering Doe the hearing he initially failed to pursue is not nonsensical, ECF 27 at p. 9. What is nonsensical is the entitled view that Doe gets to dictate UTHealth's findings without having to face the scrutiny of a hearing.

### B. Doe's claims are not ripe.

Plaintiff's argument in the Response on ripeness similarly avoids addressing the real questions. By arguing that "voluntary cessation" does not moot Doe's claims—which responds to an argument Defendants did not even make—Doe completely sidesteps the reality that his claim is not ripe for adjudication at this juncture. *See Wiley v. Tex. State Univ.*, No. 1:18-CV-930-RP, 2019 WL 317247, *4 (W.D. Tex. Jan. 24, 2019) ("A procedural due process claim 'is not ripe until the process complained of has reached its completion.' . . . 'Because the remedy for a procedural due process claim is more process, it makes little sense to adjudicate such a claim before the process is complete.'"). *Fontenot v. McGraw* addressed the voluntary-cessation doctrine for mootness, i.e., that a defendant who corrects an allegedly unconstitutional practice voluntarily may not always automatically escape a court's jurisdiction by doing so. 777 F.3d 741, 747–48 (5th Cir. 2015). That doctrine does not apply here because Defendants are not claiming that offering Doe a hearing moots the controversy—they argue that offering him a hearing is giving him the precise relief to which he would be entitled if he prevailed on his due process claims. *See* ECF 20 at pp. 12–13. But Doe is refusing to let the process play out, and Defendants have properly asserted that his claims are not ripe. *See Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003); *Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."). Accordingly, the Court lacks subject-matter jurisdiction to require

UTHealth skip the hearing process altogether and unilaterally declare its investigatory results void.

Not all students automatically choose to exercise their right to a hearing, especially if the evidence of their misconduct is overwhelming. *E.g. Haidak v. Univ. of Mass.-Amherst*, 933 F.3d 56, 72 (1st Cir. 2019) ("if the response offers no plausible defense, then the need for further inquiry diminishes, much like the manner in which a guilty plea eliminates the need for further proceedings"). Doe's refusal to exercise his right to a hearing speaks volumes.

**C. The Complaint fails to state a claim under Rule 12(b)(6).**

**1. No plausible claims under Title IX are pleaded.**

Under Doe's theory, the mere fact that Roe is a female and he is a male is enough for him to state a viable Title IX or due process claim, but the Court need not ignore the facts as Doe has clearly pleaded—he admitted he waved a gun in Roe's direction and that he was arrested for it. ECF 1 ¶ 64. Asking the Court to disregard these facts because Doe later claimed "he never intended to harm either himself or Roe" is not a serious argument. ECF 27 at p. 14. Imagine the consequences that would stem from a standard that allows parties to escape responsibility for their wrongdoing by later disclaiming an intent to do anything wrong. Doe follows this line of argument by arguing that, since Roe still tried to contact Doe after the night in question, she must not have felt very threated by the gun he waved at her in his apartment. *Id.* at p. 15. These allegations and the statements in the Complaint about Roe's behavior prior to this event do not cast any doubt on the facts that really matter in this case: "Doe picked up the unloaded pistol that was beside him and pointed it to the door while telling Roe to leave." *Id.* at p. 14. Notably, Doe does not allege facts creating the reasonable inference that Roe knew his gun was unloaded. *See* ECF 1 ¶ 64. And none of this creates a plausible inference that UTHealth made the findings it did on the basis of Doe's sex. *See* 20 U.S.C. § 1681(a); *Klocke v. Univ. of Tex. at Arlington*, 938 F.3d 204, 210 (5th Cir. 2019) ("A plaintiff alleging an erroneous outcome must point to 'particular facts sufficient to cast some articulable doubt on the accuracy of

the outcome of the disciplinary proceeding'—for instance, 'a motive to lie on the part of a complainant or witnesses, [or] particularized strengths of the [disciplined student's] defense.'") (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)).

Any alleged comments made by the Administrators are not enough to create a plausible inference of erroneous outcome or selective enforcement for the same reasons mentioned above. The test under *Yusuf* requires **both** that "particular facts sufficient to cast some articulable doubt on the accuracy of the outcome" **and** "particular circumstances suggesting gender bias was a motivating factor behind the erroneous finding." 35 F.3d at 715. Notably, all of the alleged comments made by the Administrators occurred *after* the investigation had concluded and Doe had returned to school. Thus, even accepting Doe's pleadings as true regarding the allegedly biased comments, his claim would still fail because the Complaint does not satisfy the first prong of this test for the reasons stated above.

Common sense dictates that Doe and Roe are clearly not similarly situated for the purposes of his selective-enforcement claim because Roe is not alleged to have ever threatened Doe with a firearm or anything similar. *See Doe v. Univ. of Tex. at Austin*, No. 1:19-CV-398-LY, 2019 WL 9076003, at *3 (W.D. Tex. Nov. 8, 2019) ("male plaintiffs must demonstrate selective enforcement by alleging facts that a female student was in sufficiently similar circumstances and that the female student was treated more favorably"); *see also Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 237 (4th Cir. 2021) (male student who was disciplined for an assault charge did not plausibly allege that he is similarly situated to female student accused of larceny when only the male student was initially disciplined under the school's code of conduct). The Court should dismiss the Title IX claims for failure to state a claim.

2. **Doe alleges no plausible claim for violation of his procedural due process rights.**

Even though Doe alleges he insisted on a hearing at the time of his suspension, ECF 1 ¶ 78, he did not raise the issue again because he was being offered reinstatement and a medical degree. *Id.*

¶¶ 110–11, 113, 118.[1] He did not ask McNeese for a hearing during any meeting where the terms of his reinstatement were discussed. *Id.* Once Doe was reinstated, it is undisputed that he did not ask for a hearing before or after he graduated. When he was informed that a notation would appear on his Medical Student Performance Evaluation (MSPE), Doe did not ask for a hearing. *Id.* ¶¶ 113, 143–44. Also, Doe's response does not address that UTHealth had valid safety concerns stemming from his arrest for aggravated domestic assault involving a firearm justifying an interim suspension without a hearing. *See Goss v. Lopez*, 419 U.S. 565, 582 (1975) ("Students whose presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process may be immediately removed from school."); ECF 1 ¶¶ 64, 66; *see also Walsh v. Hodge*, 975 F.3d 475, 484 (5th Cir. 2020) (recognizing the interest in "preserving the University's resources to serve its primary function of education" and "providing a safe environment for other members of the faculty and student body" in the context of a professor accused of sexual harassment). Although classes may have gone online for a period of time, Doe also admits that UTHealth curriculum required students to attend rotations at UTHealth facilities in person. ECF 1 ¶ 138. No due process cases stand for the proposition that an educational institution's going online precludes it from suspending a student who is arrested on gun-violence charges because of the safety risk posed. *See, e.g.*, *Goss*, 419 U.S. at 582.

Doe is mistaken regarding the holding of the Fifth Circuit in *Murray v. W. Baton Rouge Parish Sch. Bd.*, 472 F.2d 438, 442–43 (5th Cir. 1973). The Court in *Murray* did not find that the district court erred on the due process issue—in fact it was quite the opposite. *Id.*; *see also Sullivan v. Hous. Indep. Sch. Dist.*, 475 F.2d 1071, 1078 (5th Cir. 1973) ("It is, however, well settled that a procedural defect in an initial hearing before school officials can be cured by subsequent hearings."). The text from *Murray*

---

[1] In any event, the hearing that Doe requested at the time of the suspension would have only addressed the issue of continuing the suspension itself, not the underlying merits of the case. Doe has not alleged that he ever asked for a hearing at any time on the underlying finding of a policy violation. ECF 20.1 ¶ 5.

regarding the "cure" a subsequent hearing provides reads, "Whatever procedural inadequacies existed during the January 19th mass suspensions were cured by the district court order of January 28[.]" 472 F.2d at 443. It appears the language cited in the Response comes from the opinion in *Pervis v. LaMarque Indep. Sch. Dist.*, 466 F.2d 1054, 1058 (5th Cir. 1972), which was issued before the decisions in *Murray* or *Sullivan*. Further, none of the authorities cited on page 19 of the Response involve a Title IX respondent who was arrested on gun violence charges prior to the suspension. *Haidak*, 933 F.3d at 62 (mutual unarmed combat); *Doe v. Columbia Univ.*, 2021 WL 3292591, **4–9 (S.D.N.Y. 2021) (sexual-assault allegations not involving a gun). The threat of gun violence in this case makes Doe's circumstances distinguishable from these authorities where such a threat was not present.

Doe's remaining argument in this vein—that he was denied a hearing and all of the procedures attendant to such a hearing—are meaningless in light of his rejection of the hearing he is currently being offered, which would include the required procedures. *See* ECF 27 at pp. 20–23. When significant due process rights are implicated, the State must provide the opportunity for a hearing "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). But Doe cites no authority for the proposition that a year's span between the alleged misconduct and a hearing is not "at a meaningful time." *See id.* That is particularly true in this case given that the main focus of the alleged harm to Doe – the MSPE letter – has not even been issued yet and remains in draft form. ECF 20.3. In *Plummer*, the University's disciplinary finding was upheld even though the alleged misconduct occurred two years before formal charges were made against the students. 860 F.3d at 774–75. The Court may also consider the unusual circumstances and delay created by a pandemic. *Doe v. Tex. A&M Univ.*, No. CV H-20-4332, 2021 WL 257059, at *6 (S.D. Tex. Jan. 26, 2021) ("the COVID-19-related delays do not show a procedural irregularity that supports finding an erroneous outcome"); *see Sullivan v. Hous. Indep. Sch. Dist.*, 475 F.2d 1071, 1078 (5th Cir. 1973). Accordingly, Doe is still being provided with the opportunity for a hearing at a meaningful time, and

Civil Action No. 4:21-cv-01439
Reply in Support of Defs.' Mot. to Dismiss                                                                                  Page 8

any claims regarding meaningful manner are unripe as explained *supra* in Part II.B. Further, his claims as to each Administrator individually under 42 U.S.C. § 1983 should be dismissed for the reasons asserted in the main brief—Doe pleaded insufficient involvement on the part of the Administrators individually to state a claim under § 1983. *See Jacquez v. Pronunier*, 801 F.2d 789, 793 (5th Cir. 1986); ECF 20 at pp. 20–23.

### D. The Administrators are entitled to qualified immunity.

The uncertainty engendered by Doe's hesitancy in pursuing his right to a hearing is enough to demonstrate that the Administrators did not violate his clearly established constitutional rights. *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996). It is Doe's burden to rebut the Administrators' assertion of qualified immunity once asserted, *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007), and the Response does not meet this burden by merely repeating the allegations in the Complaint. Surely, Doe does not have a clearly established constitutional right to be inducted into a prestigious honor society, and therefore Sheela Lahoti should be dismissed. Deana Moylan is not alleged to have taken any wrongful action—her asking for clarification about a comment Roe made to her in the investigatory process and otherwise conducting her investigation according to procedure violates no clearly established right. McNeese and McDowell's participation in a meeting regarding the terms of Doe's readmission—a meeting where Doe never mentioned that he would like to have a hearing to contest the earlier findings—also is not a violation of clearly established rights. *See Morin*, 77 F.3d at 120. For the reasons asserted above, none of the Administrators' actions as alleged were objectively unreasonable; it is not unreasonable to suspend a student after he has just been arrested for aggravated domestic assault. *See Goss*, 419 U.S. at 582; *Burns-Toole v. Byrne*, 11 F.3d 1270, 1274 (5th Cir 1994). *Oliver* is distinguishable because the district court there found that further discovery on the qualified-immunity issue was warranted due to an incomplete record from the plaintiff's hearing. 2019 WL 536376, at *13. Here, Doe alleges no such uncertainty about what transpired or a particular need for

further discovery, and UTHealth should be allowed to build a record regarding its findings if Doe so wishes to challenge them in a hearing. *See id.* Doe fails to meet his burden to overcome qualified immunity and his claims against the Administrators should be dismissed accordingly.

### E. McNeese's Letter to Doe is not a settlement proposal.

In an effort to obfuscate this Court's lack of subject-matter jurisdiction, Doe characterizes UTHealth's unconditional offer of a hearing to challenge its finding that Doe violated its dating-violence policy as prohibited under Federal Rule of Evidence 408. Under Rule 408:

> Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
> (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
> (2) conduct or a statement made during compromise negotiations about the claim-- except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

Fed. R. Evid. 408. Rule 408 applies if the communication is "intended to be part of . . . negotiations toward compromise." *Lyondell Chem. Co. v. Occidental Chem. Corp.*, 608 F.3d 284, 295 (5th Cir. 2010) (quoting *Ramada Dev. Co. v. Rauch*, 644 F.2d 1097, 1106 (5th Cir. 1981)). To apply Rule 408, UTHealth's offer to conduct a hearing for Doe to challenge its finding would have to have been conditional—that is, "a valuable consideration in compromising or attempting to compromise the claim." *See* Fed. R. Evid. 408. But UTHealth did not make this offer conditioned on Doe settling the lawsuit, and no such language appears in the letter. ECF 20.4; *see Lyondell Chem. Co.* 608 F.3d at 295. The letter is not a "statement made during compromise negotiations about the claim" because it was not sent in an effort to compromise the case—it is offered to allow Doe to exercise any due process rights he alleges have been denied. *See* Fed. R. Evid. 408(2). Rule 408 does not bar the letter's consideration on the jurisdictional question presented to the Court.

Date: August 20, 2021              Respectfully submitted.

                                      KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division

/s/    *Cory A. Scanlon*
CORY A. SCANLON
Attorney-in-Charge
State Bar No. 24104599
Southern District No. 3504922
BEN DOWER
State Bar No. 24087397
Southern District No. 3071131
Assistant Attorneys General
General Litigation Division
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone (512) 463-2120
Facsimile: (512) 320-0667
cory.scanlon@oag.texas.gov
benjamin.dower@oag.texas.gov

## CERTIFICATE OF FILING AND SERVICE

On August 20, 2021, the undersigned attorney filed the foregoing document with the Clerk of the Court for the Southern District of Texas and served a true and correct copy of the foregoing to counsel below in compliance with the Federal Rules of Civil Procedure.

Andrew T. Miltenberg, Esq.
Tara J. Davis, Esq.
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
tdavis@nmllplaw.com

Amir Halevy, Esq.
Southern District No. 1259956
JORDAN, LYNCH & CANCIENNE PLLC
1980 Post Oak Blvd, Suite 2300
Houston, Texas 77056
(713) 955-4021 (direct line)
(713) 955-9644 (facsimile)
ahalevy@jlcfirm.com

COUNSEL FOR PLAINTIFF

/s/ Cory A. Scanlon
CORY A. SCANLON
Assistant Attorney General