United States District Court
Southern District of Texas
**ENTERED**
December 13, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JOHN DOE, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-21-1439 |
| | § | |
| UNIVERSITY OF TEXAS HEALTH SCIENCE | § | |
| CENTER AT HOUSTON, *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court are defendants Margaret McNeese, Deana Moylan, Sheela Lahoti, Dana McDowelle (collectively, the "Individual Defendants"), and the University of Texas Health Science Center at Houston's ("UTHealth") motions to dismiss and to stay discovery. Dkts. 20, 33. Having considered the motions, responses, replies, and the applicable law, the court is of the opinion that the motion to dismiss (Dkt. 20) should be GRANTED IN PART AND DENIED IN PART, and the motion to stay discovery (Dkt. 33) should be DENIED AS MOOT.

**I. BACKGROUND**

This case arises from a confrontation between plaintiff John Doe and Jane Roe, and the defendants' subsequent investigation and disciplinary actions. Dkt. 1. Doe alleges the following facts in his complaint, which the court takes as true for the purposes of this motion.

Doe and Roe were both students at UTHealth. Dkt. 1 ¶ 2. After years of a tumultuous relationship and while intoxicated, Doe threatened self-harm in a phone call to Roe on Valentine's Day 2020. *Id.* ¶¶ 2–3. Responding to the phone call, Roe entered Doe's apartment with a previously given key. *Id.* ¶ 63. A verbal altercation ensued where Doe waved an unloaded firearm and told Roe to leave. *Id.* ¶¶ 64. Roe left the apartment, made a criminal complaint, and reported

the incident to UTHealth.  *Id.* ¶ 4.  The criminal complaint was eventually dismissed, and Doe's record was expunged on October 27, 2020.  *Id.* ¶ 142.

UTHealth's Handbook of Operating Procedures ("HOOP") sets forth various policies on student conduct, discipline, and investigative processes.  *Id*. ¶ 154.  Among the policies in the HOOP are the sexual misconduct policy, HOOP Policy Number 59 ("HOOP 59"), and the general student conduct and discipline policy, HOOP Policy Number 186 ("HOOP 186").  *Id.*  When HOOP 59 applies, HOOP 186 states that unless the complainant and accused agree to waive hearing procedures, the accused is afforded a hearing to dispute investigative findings.  *Id.* ¶ 163. The Department of Education's Office for Civil Rights provided guidance that influenced the creation and implementation of the HOOP policies in manner that is allegedly biased against male students.  *Id.* ¶ 50.

Doe alleges that, but for an anti-male bias, UTHealth would not have considered the incident one of dating violence, selectively enforced its policies in favor of Roe, nor imposed the sanctions he ultimately received.  *See id.* ¶¶ 185–215.  Doe also contends UTHealth misclassified Roe's claims as instances of dating violence in violation of HOOP 59 because of her "shifting, baseless stories."  *Id.* ¶¶ 2, 5.  Doe alleges the investigating committee interviewed him in manner that "was more similar to an interrogation," and that his account of the incident was not seriously considered.  *Id.* ¶¶ 70, 73.  Defendants McNeese and Moylan, the UTHealth's Title IX Coordinator and Deputy Title IX Coordinator respectively, served on the committee throughout the investigation.  *Id.* ¶¶ 23–24, 70–74.  Doe alleges that the committee always "took everything Roe said at face value and presumed [Doe] guilty from the start, as a male accused."  *Id.* ¶ 84.

On March 9, 2020, McNeese informed Doe that he was interim suspended pending UTHealth's investigation and requested he waive his right to a formal hearing to contest the suspension. *Id.* ¶ 76. After Doe refused to waive his right to a hearing, McNeese informed him that a disciplinary hearing would be arranged when the COVID-19 pandemic allowed it. *Id.* ¶ 78. That hearing never took place. *Id.*

After six months of investigation, UTHealth found Doe in violation of HOOP 59. *Id.* ¶ 86. Moylan issued the Title IX determination letter to Doe. *Id.* The determination letter relied heavily on Roe's description of events. *Id.* Doe alleges that UTHealth never provided a hearing to contest the finding. *Id.* ¶ 87. He further asserts that he did not waive his rights to such a hearing. *Id.* ¶ 164. UTHealth permitted Doe a "conditional return" and ultimately allowed him to graduate. *Id.* ¶¶ 110, 132. However, during his suspension, Doe alleges that Roe engaged in spreading rumors about the investigation, and UTHealth "took no action against Roe for her failure to maintain confidentiality." *Id.* ¶ 123. McDowelle, the Assistant Dean of Admissions and Student Affairs at UT Health McGovern Medical School, even admitted that "UT is a small school and people talk" despite prior assurances of confidentiality. *Id.* ¶¶ 25, 123.

McNeese and McDowelle met with Doe on August 14, 2020. *Id.* ¶ 113. They informed him they would document the results of the investigation, including a notation of Doe's suspension, on his Medical Student Performance Evaluation ("MPSE") which will later be shared with Doe's potential residency programs. *Id.* Doe was provided with the language UTHealth intended to include. *Id.* Any interested residency programs will be allowed to contact McNeese off-record to inquire further about the events in the notation. *Id.* ¶ 148. At this same meeting, McNeese allegedly told Doe that he "should reach out to the chairman of orthopedics at UT Health

because he would empathize with [Doe] as they '*both have problems with women*."  *Id.* ¶ 114 (emphasis in original).  Further, McNeese and McDowelle allegedly gossiped throughout the meeting about Doe's "dilemma with women" while he was still present.  *Id.*

On October 9, 2020, Doe met with Lahoti, the Assistant Dean of Admissions and Student Affairs at UTHealth, and McDowelle regarding residency.  *Id.* ¶¶ 24, 128.  In that meeting, Lahoti was allegedly "extremely disrespectful and unprofessional."  *Id.* ¶ 128.  Lahoti had previously replied to an email Doe had sent to McNeese and McDowelle asking administrative questions; otherwise, the October 9th meeting was the only interaction between Doe and Lahoti.  *See id.* ¶ 125–35.  In that meeting, she allegedly made dismissive comments about Doe's academic record. *Id.* ¶ 130.  Lahoti also expressed doubt that Doe would get his criminal record expunged and advised him to "make sure you have the expunction in hand if you do not mention your arrest to the Texas Medical Board."  *Id.* ¶ 131.  Lahoti refused Doe's request to defer a year and was allegedly determined to have Doe graduate "as soon as possible, even if it was not in his best interest."  *Id.* ¶ 132.  Lahoti also discouraged Doe from pursuing orthopedics, advising him to apply to general surgery programs.  *Id.* ¶ 135.

On April 23, 2021, Doe filed the instant lawsuit seeking damages and injunctive relief for Title IX claims of erroneous outcome and selective enforcement against UTHealth and a claim for denial of procedural due process against UTHealth and the Individual Defendants. [1]  *Id.* ¶¶ 185– 238.  On July 6, 2021, the defendants filed the instant motion to dismiss.  Dkt. 20.  The defendants argue that the court lacks subject-matter jurisdiction under Federal Rule of Civil Procedure

---

[1]     Doe's Original Complaint also named the University of Texas Board of Regents as a defendant.  Dkt 1.  The parties later stipulated the dismissal of all claims against the Board of Regents.  Dkt. 26.

12(b)(1) regarding Doe's procedural due process claim because they are not "persons" under 42 U.S.C. § 1983, they are protected by sovereign immunity, and his claim is not justiciable. *Id.* at 6. Additionally, the defendants argue that Doe has failed to state a claim under Federal Rule of Civil Procedure 12(b)(6) for both his Title IX and procedural due process claims and that the Individual Defendants are entitled to qualified immunity. *Id.* On November 22, 2021, the defendants filed a motion to stay discovery pending a ruling on their prior motion to dismiss. Dkt. 33. Both motions are now before the court.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of an action for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal courts are ones of limited jurisdiction. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673 (1994)). A federal court's decision to hear a case that is beyond its subject-matter jurisdiction is not a "mere technical violation," but rather "an unconstitutional usurpation" of power. 5C Charles Alan Wright et al., *Federal Practice and Procedure* § 3522 (3d ed. 2004). Because it "spring[s] from the nature and limits of the judicial power of the United States and is inflexible and without exception," subject-matter jurisdiction is a "threshold" matter. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95, 118 S.Ct. 1003 (1998) (internal quotations omitted).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). In considering a Rule 12(b)(6) motion to dismiss a complaint, courts generally must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum*

*& Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).  The court does not look beyond the face of the pleadings in determining whether the plaintiff has stated a claim under Rule 12(b)(6).  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citations omitted).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.*  The supporting facts must be plausible—enough to raise a reasonable expectation that discovery will reveal further supporting evidence.  *Id.* at 556.

## III. ANALYSIS

### A. Subject-Matter Jurisdiction for the Procedural Due Process Claim

The defendants move to dismiss Doe's procedural due process claim, arguing that they are not "persons" under 42 U.S.C. § 1983, sovereign immunity bars suit, and the dispute is not justiciable.  Dkt. 20 at 6.  The court agrees it lacks subject-matter jurisdiction for the procedural due process claim against UTHealth and against the Individual Defendants for damages, but the court finds it has subject-matter jurisdiction for the claim against the Individual Defendants for injunctive relief.

### 1. Persons Under § 1983

42 U.S.C § 1983 creates a cause of action against any person who, acting under color of state law, abridges rights created by the Constitution and laws of the United States.  *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir. 1994).  Neither a State nor a state official acting in their official capacity is a "person" within the meaning of § 1983.  *Will v. Michigan Dept. of State*

6

*Police*, 491 U.S. 58, 64, 109 S. Ct. 2304 (1989); *see also Hafer v. Melo*, 502 U.S. 21, 21, 112 S. Ct. 358 (1991); *Inyo Cnty., Cal. V. Paiute-Shoshone Indians of the Bishop Cmty. of the Bishop Colony*, 538 U.S. 701, 708, 123 S. Ct. 1887 (2003).  The Fifth Circuit has recognized that "state universities as arms of the state are not 'persons' under § 1983." *Stotter v. Univ. of Texas at San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007).  When a plaintiff seeks monetary relief, official-capacity defendants assume the identity of the State, and suits against them are no different from suits against the State itself.  *See Hafer*, 502 U.S. at 21.

When a plaintiff seeks money damages from a state official, it "is not a suit against the official but rather is a suit against the official's office" and is therefore "no different from a suit against the State itself."  *Id.*; *see also Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099 (1985) (the real party in interest in an official-capacity suit is the government entity and not the named official).  However, when a plaintiff seeks injunctive relief, the official-capacity defendant falls within § 1983's statutory scope.  *See Hafer*, 502 U.S. at 27 (quoting *Will*, 491 U.S. at 71, n.10. ("A state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983")); *see also Graham*, 473 U.S. at 167 ("official-capacity actions for prospective relief are not treated as actions against the State").

In the instant case, Doe alleges he was deprived of due process when he was denied a hearing to contest the interim suspension the defendants imposed during the school's investigation. Dkt. 1 ⁋ 229.  As a result, Doe seeks money damages, attorney's fees, and an injunction directing UTHealth to:

> (i) reverse the outcomes, findings, and sanctions regarding the complaint; (ii) expunge [Doe's] disciplinary record with respect to the Roe complaint; (iii) remove any record of the findings of [his] suspension from his educational file/disciplinary record/transcript, (iv) remove the professionalism notation on [his] MSPE

regarding the Roe complaint; and (v) any and all further actions required to return [him] to the status quo ante.

Dkt. 1 ¶ 238.

As an arm of the state, UTHealth is not a person under § 1983. *See Stotter*, 508 F.3d at 821. As state officials, the Individual Defendants are likewise not persons under § 1983 for Doe's claim for damages. *See Will*, 491 U.S. at 71. However, for Doe's claim for injunctive relief, the Individual Defendants are persons under § 1983. *See Hafer*, 502 U.S. at 27.

### 2. Sovereign Immunity

Despite being persons under § 1983, the Individual Defendants argue that they are nevertheless protected from suit by sovereign immunity. Dkt. 20 at 8–9. The Eleventh Amendment "bars suits in federal courts by citizens of a state against their own state or a state agency or department." *Richardson v. Southern Univ.*, 118 F.3d 450, 452 (5th Cir. 1997). A plaintiff cannot avoid sovereign immunity by suing a state agency or similar arm of a state rather than the state itself. *Richardson*, 118 F.3d at 452. Sovereign immunity may be waived by the state or abrogated by Congress. *Cozzo v. Tangipahoa Parish Council-President*, 279 F.3d 273, 280–81 (5th Cir. 2002). Texas has not waived immunity from claims brought under § 1983. *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015). Further, "Congress has not expressly waived sovereign immunity for § 1983 suits." *Richardson*, 118 F.3d at 453.

Sovereign immunity is not limitless and is subject to the *Ex parte Young* exception. *See* 209 U.S. 123, 167–68, 28 S. Ct. 441 (1908). This exception rests on the "premise that a state official is "not the State for sovereign-immunity purposes" when "a federal court commands [him or her] to do nothing more than refrain from violating federal law." *Id.* To succeed in demonstrating that the *Ex parte Young* exception applies to a sovereign immunity claim, the claim

must: "(1) be brought against state officials who are acting in their official capacities; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation of federal, not state law." *Williams on Behalf of J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020). "Therefore, in order to determine whether a suit complies with the requirements of *Ex parte Young*, the 'court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Id.* (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 646, 122 S. Ct. 1752 (2002)*).

For the first requirement, Doe's claims against the Individual Defendants are brought against state officials acting in their official capacities. *See* Dkt. 1 ¶¶ 22–25. UTHealth is a public institution established by the State of Texas, and the Individual Defendants act as agents of UTHealth. *See id.* ¶ 223.

For the second requirement, the defendants argue that Doe's requested relief is a retroactive remedy rather than a prospective one. Dkt. 20 at 2. *Ex parte Young* does not apply when a federal law "has been violated at one time or over a period of time in the past," so to prevail, Doe must allege that defendants' actions are currently violating federal law. *Williams*, 954 F.3d at 737 (citing *Papsan v. Allain*, 478 U.S. 265, 277–78, 106 S. Ct. 2932 (1986)). Doe has alleged an ongoing procedural due process violation by claiming he continues to be denied a disciplinary hearing. Dkt. 1 ¶¶ 13–14. Defendants dispute the allegation and state that UTHealth has offered Doe a hearing to challenge the findings of its investigation and that he has not, to date, accepted the offer.[2] Dkt. 20 at 11. However, when considering a motion to dismiss under Rule 12(b)(6), the

---

[2]     If UTHealth has offered such a hearing, then the plaintiff's complaint may represent a factual contention not based on "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances." *See* Fed. R. Civ. P. 11(b). If not, the defendant's motion to dismiss may represent the same. *See id.*

court "must accept as true all well-pleaded facts in the complaint, and the complaint is to be liberally construed in favor of the plaintiff." *Kaiser Aluminum*, 677 F.2d at 1050. Thus, for the purposes of this motion, the court concludes that Doe has satisfied the second *Ex parte Young* requirement.

For the third requirement, Doe's claims allege a violation of federal law, specifically, the deprivation of procedural due process guaranteed by the Fourteenth Amendment. Dkt. 1 ¶¶ 226–229. Therefore, all three requirements have been met, and the *Ex parte Young* exception to sovereign immunity applies to Doe's claims for injunctive relief against the Individual Defendants.

### 3. Justiciability

Article III of the United States Constitution restricts federal courts to consider only "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. The judicial doctrines of standing and ripeness have evolved from this constitutional restriction. *See Henderson v. Stalder*, 287 F.3d 374, 378 (5th Cir. 2002). The Individual Defendants move to dismiss Doe's procedural due process claims arguing that he lacks standing and his claims are not ripe. Dkt. 20 at 12–13. The court disagrees.

*i. Standing*

If a plaintiff has not suffered an injury caused by the defendant that the court can remedy, there is no case or controversy for a federal court to resolve. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). The party invoking federal jurisdiction bears the burden of demonstrating a standing to sue. *Lujan v. Def. Of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct 2130 (1992). To meet this burden, a plaintiff "must establish that (1) he has suffered an injury in fact . . . (2) there is a 'causal connection between the injury and the conduct complained of;' and (3) it is 'likely . . . that the injury will be redressed by a favorable decision.'" *Deutsch v. Annis Enters., Inc.*, 882 F.3d

169, 173 (5th Cir. 2018) (quoting *Lujan*, 504 U.S. at 560–61).  When, as here, a plaintiff seeks

equitable relief, he "must demonstrate either continuing harm or a real and immediate threat of

repeated injury in the future." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003).

An injury in fact occurs when a plaintiff suffers the invasion of a legally protected interest

that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."

*Deutsch*, 882 F.3d at 173.  Here, Doe alleges that his injuries are both concrete and imminent

because he will be precluded from matching with a competitive residency program of his choice

absent an expungement of disciplinary records and removal of the notation on his MSPE.  Dkt. 1

¶ 178.  The defendants cede this point.  *See* Dkt. 20 at 18.  Similarly, defendants do not contest

that their conduct caused Doe's alleged injuries.  *See id.*  Instead, the defendants argue that Doe

lacks standing because he cannot meet the redressability requirement.  Dkt. 20 at 11.

Doe must show that his injuries are likely to be redressed by favorable judicial relief to

establish standing.  *See TransUnion*, 141 S. Ct. at 2203.  Doe alleges that he was denied procedural

due process because he was not provided a fair and impartial disciplinary process, including a

hearing to contest findings of UTHealth's investigation, and that his future residency and career

opportunities are forever hindered by a subsequent notation of the investigation in his MSPE.

Dkt. 1 ¶¶ 13–15.  He argues the court can redress this violation by invalidating the results of

UTHealth's investigation and expunging his record.  *See id.* 1 ¶ 238.  The court agrees that an

injunction could redress the alleged injuries but is skeptical about the scope of Doe's requested

injunction.

Doe argues that when there are due process violations, all of UTHealth's findings are

invalid and must be vacated.  *See* Dkt. 27 at 9.  In support, Doe cites to the Seventh Circuit's

opinion in *Doe v. Purdue University*. *Id.* (citing 928 F.3d 652, 667 (7th Cir. 2019)). In *Purdue*, the plaintiff received a university disciplinary hearing and was suspended after being found guilty of sexual violence. 928 F.3d at 656. A magistrate judge had initially dismissed the due process claim after finding the plaintiff had not alleged any threat of future harm to support an injunction. *Id.* at 659. In reversing and remanding, the Seventh Circuit was not evaluating the impact of omitting a hearing, but whether the plaintiff had alleged deprivation of a protected interest. *Id.* at 667. The instant case is distinguishable because the existence of a protected interest is not in dispute and Doe alleges that he was deprived of a hearing entirely. *See* Dkts. 1 ¶ 216–38, 20 at 18. The court finds *Purdue* is not applicable to the instant case.

While the court finds *Purdue* unpersuasive, Doe nevertheless satisfies Article III's redressability prong because an injunction requiring the Individual Plaintiffs to conduct a hearing would redress the procedural due process violation. *See Perry v. Sindermann*, 408 U.S. 593, 92 S. Ct. 2694 (1972) (holding that a terminated professor was not entitled to reinstatement, but college officials were obligated to grant plaintiff a hearing); *see also O'Donnell v. Harris Cnty.*, 892 F.3d 147, 163 (5th Cir. 2018) ("A district court abuses its discretion if it does not 'narrowly tailor an injunction to remedy the specific action which gives rise to the order.'") (quoting *John Doe #1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2014)). Therefore, Doe has standing to bring his procedural due process claim.

*ii. Ripeness*

"Ripeness separates those matters that are premature because the injury is so speculative and may never occur from those that are appropriate for judicial review." *United Transp. Union v. Foster*, 205 F.3d. 851, 857 (5th Cir. 2000). Courts must consider both "the fitness of the issues

for judicial decision" and any "hardship to the parties of withholding court consideration." *Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803, 807–08, 123 S. Ct. 2026 (2003).  When the alleged hardship is abstract or hypothetical, the "court should dismiss [the] case for lack of ripeness." *Foster*, 205 F.3d at 857 (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583 (5th Cir.1987).

The defendants do not argue the issues in the instant lawsuit are not fit for judicial decision. *See* Dkt. 20.  Instead, they argue that the procedural due process claim is not yet ripe under the hardship element because Doe has refused a hearing to challenge investigative findings, the wording of the MSPE notation has not been finalized, and the notation has not yet been disclosed nor had the effect of limiting Doe's match prospects.  Dkt. 20 at 12–13.

The defendants' argument misconstrues the hardship element of the ripeness doctrine.  *See Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 545 (5th Cir. 2008) (a plaintiff shows hardship when he shows "the real possibility of irremediable adverse consequences were [the court] to deny review").  When the court evaluates the hardship of withholding consideration, the analysis is not whether the alleged harm has yet to occur, but whether the alleged harm is abstract or hypothetical. *Compare Texas v. United States*, 523 U.S. 296, 300, 118 S. Ct. 1257 (1998) (finding a claim challenging the preclearance provision of the Voting Rights Act of 1965 to be unripe because "[w]hether Texas will appoint a master or management team under [the provision] is contingent on a number of factors" and it might not occur at all), *with Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 508, 92 S. Ct. 1749 (1972) (finding a challenge to a Michigan statute ripe despite the state's intention to not enforce the statute until certain conditions occurred because

"compliance is coerced by the threat of enforcement" as soon as those conditions occurred rendering the harm "both immediate and real.").

Doe's complaint states that he has neither waived nor been offered a hearing.  Dkt. 1 ¶ 164. Further, Doe alleges that the defendants have drafted language for the MSPE notation, determined the scope of detail that the notation will include, and stated that they will respond to inquiries concerning the notation made by Doe's potential residency programs.  *Id.* ¶¶ 113, 147–148.  As a result, Doe alleges these acts will cause harm in the form of a tarnished reputation, economic loss, diminished educational prospects, and severely limited career opportunities.  *Id.* ¶ 15.  Taking Doe's allegation as true, the court finds that the dispute is past the point of abstract or hypothetical contentions, and Doe's procedural due process claim is ripe.

Therefore, UTHealth's motion to dismiss the procedural due process claim for lack of subject-matter jurisdiction is GRANTED.  The Individual Defendants' motion to dismiss the procedural due process claim for lack of subject-matter jurisdiction is GRANTED IN PART AND DENIED IN PART.  The Individual Defendants' motion is GRANTED regarding the claim for damages, but it is DENIED regarding the claim for injunctive relief.

**B.  Subject-Matter Jurisdiction for the Erroneous Outcome Claim**

The defendants move to dismiss Doe's erroneous outcome Title IX claim for lack of subject-matter jurisdiction due to lack of ripeness.  Dkt. 20 at 12–13.  When determining whether a claim is ripe, the court must consider both "the fitness of the issues for judicial decision" and any "hardship to the parties of withholding court consideration."  *Nat'l Park Hosp.*, 538 U.S. at 807–08.  The defendants argue the claim is not ripe because Doe has refused to call a disciplinary hearing to challenge UTHealth's investigatory findings, and he will face no hardship "because he

has not alleged that he has failed to match with a residency program or been denied graduation." Dkt. 20 at 12.  Doe's complaint states the exact opposite, alleging that he has neither waived nor been offered a hearing.  Dkt. 1 ¶ 164.  Further, Doe alleges that he faces hardship in the form of a tarnished reputation, economic loss, diminished educational prospects, and severely limited career opportunities.  *Id.* ¶ 15.

Taking all factual allegations in Doe's complaint as true for the purposes of this motion, the court finds Doe's claim is ripe.  Therefore, the defendants' motion to dismiss the erroneous outcome Title IX claim for lack of subject-matter jurisdiction is DENIED.

## C.  Failure to State a Claim

The defendants move to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted and assert that the Individual Defendants are entitled to qualified immunity.  The court agrees that Doe has failed to state a claim upon which relief can be granted with respect to the due process claim against defendant Lahoti, the erroneous outcome claim for damages, and the selective enforcement claim in its entirety.  The court disagrees that the Individual Defendants are entitled to qualified immunity.

### 1.  Procedural Due Process Claim

To establish a *prima facie* procedural due process claim "under § 1983, 'a plaintiff must first identify a protected life, liberty, or property interest, and then prove that governmental action resulted in a deprivation of the interest.'"  *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001)).  Doe brings his claim of denial of procedural due process against all defendants and identifies his protected property interest as

his education and future employment opportunities.  Dkt. 1 ¶ 220.  The Fifth Circuit recognizes a protected property interest in higher education.  *Plummer v. Univ. of Houston*, 860 F.3d 767, 773 (5th Cir. 2017).  The defendants do not contest this point and instead argue Doe has not alleged facts sufficient to show he was deprived of that interest without due process.  Dkt. 20 at 18.  The court concludes that Doe alleges sufficient facts to support his procedural due process claim against McNeese, Moylan, and McDowelle, but not against Lahoti.

### i. Waiver

The defendants argue that Doe has waived his procedural due process claim filing the instant lawsuit rather than participating in a hearing.  Dkt. 20 at 19.  As has already been stated, Doe's complaint alleges the exact opposite, claiming that he has neither waived nor been offered a hearing.  Dkt. 1 ¶ 164.  Taking all factual allegations in Doe's complaint as true for the purposes of this motion, the court finds Doe has not waived his procedural due process claim.

### ii. McNeese, Moylan, and McDowelle

"The essential requirements of procedural due process under the Constitution are notice and an opportunity to respond."  *Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 562 (5th Cir. 2003).  Doe alleges that he was denied the opportunity to respond without a fair and impartial hearing.  Dkt 1. ¶ 229.  Doe also alleges facts about McNeese, Moylan, and McDowelle's role in UTHealth's investigation to establish they plausibly could have provided the required procedural due process.  *Id.* ¶¶ 68–153.

Specifically, Doe alleges McNeese and Moylan were committee members engaged with Doe throughout the disciplinary process.  *Id.* ¶ 70.  Further, McNeese informed Doe that he was interim suspended pending the outcome of the investigation.  *Id.* ¶ 76.  McNeese also confirmed

16

that a disciplinary hearing to contest the interim suspension would be arranged when possible. *Id.* ¶ 78. Moylan issued the Title IX determination letter to Doe, informing him that he was found responsible for violating HOOP 59. *Id.* ¶ 86. Finally, Doe alleges that McDowelle and McNeese informed Doe together that a notation of the violation would be included on his MSPE. *Id.* ¶ 113. McDowelle later confirmed that UTHealth was aware that Doe's confidentiality might not have been protected throughout the investigation, increasing the likelihood of injury. *Id.* ¶ 123.

To survive a 12(b)(6) motion to dismiss, the "allegations must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. Here, Doe has alleged sufficient facts to show Moylan, McNeese, and McDowelle were each involved in the disciplinary process to the extent that it is plausible they caused a deprivation of his protected property interest by failing to provide a hearing.

### iii. Lahoti

Doe characterizes Lahoti as "extremely disrespectful and unprofessional." Dkt. 1 ¶ 128. A disrespectful and unprofessional demeanor does not give rise to the implication that Lahoti deprived him of a protected interest; instead, Doe must allege facts sufficient to show Lahoti deprived him of notice or an opportunity to respond. *See Finch*, 333 F.3d at 562.

Doe's alleged interactions with Lahoti are limited to one e-mail and one conversation. Dkt. 1 ¶¶ 126–35. Doe alleges that Lahoti provided career advice that demeaned his academic record and confirmed that Doe was on track to graduate on time during their conversation. *Id.* Doe takes issue with the advice she provided and the manner it was delivered, but he does not otherwise allege that she was involved in the decision to suspend him, had the authority to impact

the investigation's findings, or any other fact that would allow for the inference that she was involved in the failure to provide procedural due process. *See id.*

To survive a 12(b)(6) motion to dismiss, the "allegations must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. Based on the alleged facts, any claim that Lahoti was involved in the denial of due process would be entirely speculative. *See* Dkt. 1 ¶¶ 126–35. Thus, Doe fails to state a claim upon which relief can be granted against Lahoti.

Therefore, the defendants' motion to dismiss Doe's procedural due process claim for failure to state a claim upon which relief can be granted is GRANTED IN PART AND DENIED IN PART. The motion is GRANTED with respect to the claim against Lahoti and DENIED with respect to the claims against Moylan, McNeese, and McDowelle.

### 2. Erroneous Outcome Claim

Doe brings a Title IX claim against UTHealth for erroneous outcome seeking damages and injunctive relief. Dkt. 1 ¶¶ 185–99. "A plaintiff alleging an erroneous outcome must point to 'particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding . . . based *on the record before the disciplinary tribunal*.'" *Klocke v. Univ. of Texas at Arlington*, 938 F.3d 204, 210 (5th Cir. 2019) (emphasis in original) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)). For example, he may allege that the complaint or witnesses had a motive to lie or that his defenses had particular prevailing strengths. *Yusuf*, 35 F.3d at 715. The plaintiff must also show a "causal connection between the flawed outcome and gender bias." *Klocke*, 938 F.3d at 210. In a suit for damages, "[t]he plaintiff must show that the school's response was 'clearly unreasonable in light of the known circumstances.'" *Id.* (quoting *Davis Next Friend of LaShonda D. v. Monroe Cnty. Bd. of Edu.*, 526 U.S. 629, 648, 119 S. Ct.

1661 (1999)).  "[T]here is no reason why courts, on a motion to dismiss, for summary judgment, or for a directed verdict, could not identify a response as not 'clearly unreasonable' as a matter of law."  *Davis*, 526 U.S. at 649.

The defendants argue that the erroneous outcome claim fails because Doe admits to factual elements giving rise to the investigation, including brandishing a firearm at Roe, and Doe has forgone the opportunity to question the investigation's findings and results.  Dkt. 20 at 14–15.  The court finds that the complaint has plausibly alleged an erroneous outcome caused by gender bias but not that UTHealth's response was clearly unreasonable as a matter of law.

To establish the existence of gender bias, Doe alleges that the Department of Education's guidance created an inherent gender bias in UTHealth's policies that directly impacted him throughout the investigation.  *Id.* ¶ 50–51.  Specifically, Doe alleges this bias resulted in the investigation committee disregarding his responses to the initial interview and the investigation summary.  *Id.* ¶¶ 75–77, 83–84.  Doe alleges that committee members joked and gossiped about his "problems with women" and failed to protect his confidentiality throughout the disciplinary process.  *Id.* ¶ 114, 123.

To establish the existence of an erroneous outcome caused by that gender bias, Doe alleges that the investigation found him responsible for dating violence.  *Id.* ¶ 5.  Specifically, UTHealth determined Doe violated HOOP 59.  *Id.* ¶ 86.  Doe alleges that the investigation will be recorded on his MSPE.  *Id.* ¶ 113.  Doe claims this outcome is erroneous because the February 14, 2020, incident should have been classified and evaluated as a mental health event.  *Id.* ¶ 5.  And he claims UTHealth only determined otherwise because it presumed him to be "guilty from the start, as a male accused."  *Id.* ¶ 84.  Doe's factual allegations need only raise his right to relief "above the

19

speculative level." *See Twombly*, 550 U.S. at 555.  Doe alleges sufficient facts to raise his claim

that there was a gender bias that caused an erroneous outcome above the speculative level.

In a suit for damages under Title IX, Doe must allege facts to support that UTHealth's

response was "clearly unreasonable in light of the known circumstances."  *See Klocke*, 938 F.3d

at 210.  Doe admits he was in a relationship with Roe, another student at UTHealth.  Dkt.1 ¶¶ 56–

59.  He also admits that he was intoxicated during the incident on February 14, 2020, and that he

called Roe threatening to commit suicide.  *Id.* ¶ 62.  Critically, Doe admits that when Roe came

over to check on him, he engaged in a verbal altercation that involved waving a firearm.  *Id.* ¶ 64.

While the additional allegations in Doe's complaint may indicate that another outcome would also

be reasonable, the presence of other potentially reasonable outcomes does not render UTHealth's

response clearly unreasonable when non-discriminatory reasons support that response.  *See*

*Klocke*, 938 F.3d at 212 (summary judgment was appropriate because the disciplinary decisions

made were reasonable and justifiable on non-discriminatory grounds).

The court finds the facts alleged in Doe's complaint support non-discriminatory reasons

for UTHealth's response, rendering that response not clearly unreasonable in the light of known

circumstances.  Thus, Doe is not entitled to damages on this claim as a matter of law.  *See id.*

at 210.  Therefore, UTHealth's motion to dismiss the erroneous outcome claim is GRANTED IN

PART AND DENIED IN PART.  The motion is GRANTED regarding the claim for damages and

DENIED regarding the claim for injunctive relief.

### 3. Selective Enforcement Claim

Doe brings a Title IX claim against UTHealth for selective enforcement seeking damages

and injunctive relief.  Dkt. 1 ¶¶ 200–15.  "A selective enforcement claim needs to allege that either

punishment or the decision to initiate enforcement proceedings was motivated by gender bias." *Klocke*, 938 F.3d at 213. The plaintiff must show that "regardless of the student's culpability, the severity of the penalty and/or the university's decision to initiate proceedings was affected by the charged student's gender." *Plummer*, 860 F.3d at 777. When resolving selective enforcement claims, courts often look to the treatment of a similarly situated opposite-gender student to determine whether a plaintiff was mistreated due to his gender. *See e.g.*, *Klocke*, 938 F.3d at 213 (finding that comparison to nine female students who were investigated for misconduct in factually distinct situations did not permit the inference that similarly situated female students were treated more favorably than a male student); *Doe v. Univ. of Texas at Austin*, No. 1:19-CV-398-LY, 2019 WL 9076003, at *3 (W.D. Tex. Nov. 8, 2019) (noting that "male plaintiffs must demonstrate selective enforcement by alleging facts that a female student was in sufficiently similar circumstances and that the female student was treated more favorably").

Doe alleges that he "was subjected to a biased, prejudiced and explicitly unfair process" due to UTHealth's selective enforcement of its policies. Dkt. 1 ¶¶ 211–13. Notably, Doe alleges his "gender was a motivating factor in both UTHealth's decision to continue the investigation even after criminal expungement" and in the notation on his MSPE, "which would preclude [his] ability to match with a competitive residency program. *Id.*¶ 208. However, Doe must allege facts to support that UTHealth would not investigate a comparably situated female student or that UTHealth would not impose a similar sanction upon that student. *See Klocke*, 938 F.3d at 213. The court concludes that Doe's complaint falls short.

Doe alleges that he and Roe are similarly situated male and female students due to Doe and Roe's mutual allegations against each other throughout the disciplinary process. Dkt. 1 ¶ 209.

21

Further, Doe alleges UTHealth selectively enforced policies against him but not Roe. *Id.* However, this allegation is insufficient because while Doe held and waved a firearm, Roe did not. *See id.* ¶ 64. Doe does not plausibly allege that a similarly situated female student—one who waived a firearm at her romantic partner during an altercation—would have been treated differently. *See id.* ¶¶ 200–15. Similarly, Doe does not allege facts that show, but for his gender, UTHealth would not have investigated Roe's criminal complaint, nor would it favor another disciplinary measure over the MSPE notation. *See id.* Indeed, the language of the MSPE draft at issue is silent on the gender of any parties involved. *See id.* ¶ 113.

Thus, the court finds Doe has failed allege the necessary facts to establish a *prima facie* case for selective enforcement under Title IX. Therefore, the motion to dismiss Doe's selective enforcement claim under Title IX is GRANTED.

### 3. Qualified Immunity

The Individual Defendants move to dismiss all claims because they are entitled to qualified immunity. Dkt. 20 at 6. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982)). Qualified immunity "is an immunity from claims for damages only." *Morgan v. Swanson*, 659 F.3d 359, 365 n.3 (5th Cir. 2011). "Qualified immunity does not protect officials from injunctive relief." *Williams v. Ballard*, 466 F.3d 330, 334 n.7 (5th Cir. 2006).

The court has dismissed all of Doe's claims for damages, and only his claims for injunctive relief persist.  Thus, qualified immunity does not apply to any remaining claims.  Therefore, the defendants' motion to dismiss based on qualified immunity is DENIED.

## D.  Motion to Stay Discovery

The defendants move to stay discovery pending the outcome of their motion to dismiss (Dkt. 20) and the court's determination of "the threshold question of subject-matter jurisdiction and qualified immunity."  Dkt.  33.  The court has disposed of those threshold questions, and thus the motion to stay discovery is DENIED AS MOOT.

## IV.  CONCLUSION

Based on the preceding analysis, the defendants' motion to dismiss (Dkt. 20) is GRANTED IN PART AND DENIED IN PART, and the following claims are DISMISSED WITH PREJUDICE:

- Doe's § 1983 claims against UTHealth and Lahoti;

- Doe's § 1983 claims for damages against McNeese, Moylan, and McDowelle;

- Doe's Title IX claim for damages for erroneous outcome against UTHealth; and

- Doe's Title IX claim for selective enforcement against UTHealth.

The defendants' motion to dismiss (Dkt. 20) is DENIED for:

- Doe's § 1983 claims for injunctive relief against McNeese, Moylan, and McDowelle; and

- Doe's Title IX claim for injunctive relief for erroneous outcome against UTHealth.

The defendants' motion to stay discovery (Dkt. 33) is DENIED AS MOOT.

Signed at Houston, Texas on December 13, 2021.

_____
Gray H. Miller
Senior United States District Judge